JUDGE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM V. LANGFITT III, individually, and as executor of the Estate of the William V. Langfitt, IV, and PATRICIA E. LANG-FITT, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>PIERCE COUNTY, COLBY EDWARDS and "JANE DOE" EDWARDS,<br><br>Defendants. | NO. 3:21-cv-05122-BHS<br><br>DEFENDANTS' FRCP 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>NOTE ON MOTION DOCKET:<br>APRIL 23, 2021 |

## I.  RELIEF REQUESTED

COMES NOW Defendants Pierce County, Colby Edwards and "Jane Doe Edwards" ("Pierce County Defendants"), by and through their attorneys, Pierce County Prosecuting Attorney Mary E. Robnett, and Deputy Prosecuting Attorneys Daniel R. Hamilton and Kristal M. Cowger, and move under Federal Rule of Civil Procedure 12(c) to dismiss Plaintiffs' claims on the ground they fail to state a claim upon which relief can be granted. The motion is based on the Complaint's allegations and the file herein.

## II.  STATEMENT OF FACTS

Plaintiffs William Langfitt III, individually and as executor of the estate of William Langfitt IV,

and his wife Patricia Langfitt, individually, filed suit for "federal civil rights claims" under "42 USC § 1983 and the Fourth and Fourteenth Amendment," and apparently for state "claims of excessive force, false arrest, unlawful seizure, tort of outrage, negligence and violation of RCW 49.60." Dkt. 1 at 2.

The Complaint's sparse operative factual allegations assert that at some unspecified time of the day on March 16, 2018, "Naomi Powers called 911 and told dispatch" that William V. Langfitt IV (hereinafter "Langfitt") "was having a mental health crisis and she needed someone to help her get" him to "the hospital." Dkt. 1 at 4. Other than the Complaint describing Langfitt as "distraught" and "in the street barefoot with nothing but shorts and tee shirt on" holding "a picture," it does not de-scribe what 911 was advised decedent's violent actions had been toward Powers or others that had prompted her call for help. According to the Complaint, at some unspecified point thereafter Pierce County Deputy Edwards arrived at the scene in response to the 911 call, "flung his door open and immediately drew his firearm" and -- without attempting "to negotiate or de-escalate *the situation* with" Langfitt – allegedly "began to shoot" despite the decedent supposedly having not made "any verbal or physical threats towards Defendant Colby Edwards" and having "never touched Defend-ant Colby Edwards." *Id.* at 4-5 (emphasis added). The Complaint does not describe the erratic and threatening actions Langfitt had taken toward others just before the deputy arrived, that he immedi-ately sprinted toward the deputy when Langfitt was illuminated by the police cruiser's spotlight, and that witnesses believed he appeared to be holding a knife as he rapidly closed the distance to Deputy Edwards.  It also makes no mention that in the span of less than ten seconds the deputy had to strug-gle to release his seatbelt so as to exit his cruiser, take several steps backward from the open cruiser door to create distance, draw his weapon as he issued warnings that Langfitt "get back," and at the last second finally fire when Langfitt had come within only a few feet of him and surprisingly turned and jumped into the driver's seat of the running patrol car where a knife and fully loaded

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 2
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1   assault rifle were suddenly accessible to him. In short, the Complaint omits any fact showing the

2   grounds that existed for Deputy Edwards' reasonable belief his life and the lives of others stopped

3   nearby on the road were in immediate danger. *See* 3/30/21 Answer.

4   As to the County, the Complaint makes the vague and conclusory statement the incident some-

5   how was "proximately caused by its customs, policies and usages" because "[a] deputy shooting

6   and killing an unarmed individual is likely reflective of a lack of training and or/supervision that

7   amounts to deliberate indifference," and that the decedent allegedly "was the second person shot

8   and killed by the defendant deputy over a twelve-month timespan." *Id.* at 3. The Complaint alleges

9   no specific fact supporting these conclusory allegations but asserts: "Whether the County had

10  proper training, procedure, and policies in place for its deputies on how to handle similar situations

11  prior to resorting to shooting and killing unarmed citizens who are experiencing mental health

12  trauma will be proven after discovery is concluded and at trial." *Id.*

13  ### III.   ANALYSIS

14  The analysis under Federal Rule of Civil Procedure 12(c) is "substantially identical" to the

15  analysis under Rule 12(b)(6) because, under both rules, "a court must determine whether the facts

16  alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United*

17  *States*, 683 F. 3d 1102, 1108 (9th Cir. 2012). Rule 12(b)(6) requires the court to examine whether a

18  complaint's allegations "raise a right to relief above the speculative level on the assumption that all

19  of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 561-63

20  (2007). However, the idea "that a court must accept a complaint's allegations as true is inapplicable

21  to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

22  at 555 & 557 (holding that "a conclusory allegation … does not supply facts adequate to show ille-

23  gality," and that Courts also are not "bound to accept as true a legal conclusion couched as a factual

24  allegation"). In short, "the Federal Rules do not require courts to credit a complaint's conclusory

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 3
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1   statements *without reference to its factual context.*" *See Ashcroft v. Iqbal,* 556 U.S. 662, 686 (2009).

2   Mere allegations "*without context*, description, *or* factual support,*" are "no more than '[t]hreadbare

3   recitals of the elements of a … cause of action, supported by mere conclusory statements,' which do

4   not meet the pleading standard articulated in *Iqbal*." *Weymouth v. Cty. of Maricopa*, 2019 WL

5   429894, at *3 (D. Ariz. 2019)(emphasis added). *See also Soil Retention Products, Inc. v. Brentwood*

6   *Indus., Inc*., 2021 WL 689914, at *17 (S.D. Cal. 2021) (dismissing claim because *Iqbal* holds "the

7   Federal Rules do not require courts to credit a complaint's conclusory statements without reference

8   to its factual context."); *Brockway v. JP Morgan Chase Bank*, 2012 WL 4894253, at *3 (S.D. Cal.

9   2012)(granting motion to dismiss due to "Plaintiff's failure to support the legal conclusion with any

10  *factual context* in any of her three complaints" *on*)(emphasis added).

11       Further, a complaint also must allege "*enough* facts to state a claim to relief that is *plausible  its*

12  *face*." *See Iqbal, id. at* 678 (quoting *Twombly*, 550 U.S. at 570)(emphasis added). A claim has "fa-

13  cial plausibility" when the party seeking relief "pleads *factual content* that allows the court to draw

14  the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *id.* at 678.

15  Factual context is essential because "[d]etermining whether a complaint states a plausible claim for

16  relief will ... be a *context-specific task* that requires the reviewing court to draw on its judicial expe-

17  rience and common sense." *Iqbal*, 556 U.S. at 679 (emphasis added).

18       Finally, conclusory allegations of law and unwarranted inferences will not defeat a proper Rule

19  12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden*

20  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Accordingly, dismissal may be based on either

21  the lack of a cognizable legal theory or the absence of *sufficient* facts alleged under such a theory.

22  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990), overruled on other

23  grounds by *Twombly, id.* at 562-63. Because here the Complaint fails to provide a sufficient factual

24  context for its claimed causes of action, and often lacks a cognizable legal theory as well, it fails to

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 4
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  state a federal or state law claim against Pierce County or Deputy Edwards and should be dismissed.

2  A.  COMPLAINT FAILS TO STATE A FEDERAL CLAIM FOR RELIEF UNDER §1983

3      1.  No Federal Claim Is Stated Against Pierce County

4      When suing for a Constitutional violation "the doctrine of *respondeat superior* is unavailable."

5  *See Mahone v. Pierce Cty*., 2011 WL 3298898, at *3 (W.D. Wash. 2011), report and recommenda-

6  tion adopted, 2011 WL 3298528 (W.D. Wash. 2011). *See also Monell v. Dept. of Social Services of*

7  *City of New York*, 436 U.S. 658, 691 (1978); *City of St. Louis v. Praprotnick*, 485 U.S. 112, 123

8  (1988). Instead, municipal liability for an alleged violation of a federal right requires existence of a

9  governmental "policy or practice" that "through ... deliberate conduct, ... was the 'moving force' be-

10  hind the injury alleged …." *Board of Cnty Com'rs of Bryan Cnty, Oklahoma v. Brown*, 520 U.S.

11  397, 404 (1997)(County not liable for unconstitutional act by one of its deputies). *See also Monell*,

12  436 U.S. at 694 (no government liability for § 1983 violations unless official policy is 'moving

13  force' for Constitutional violation). A claim Plaintiff "has suffered a deprivation of federal rights at

14  the hands of a municipal employee will not alone permit an inference of municipal culpability and

15  causation; the plaintiff will simply have shown that the employee acted culpably." *Id*. at 406.

16     Instead, a *Monell* claim requires proof: "(1) plaintiff was deprived of a constitutional right; (2)

17  the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's consti-

18  tutional right; and (4) the policy is the moving force behind the constitutional violation." *Dougherty*

19  *v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of*

20  *Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Hence, to "survive a motion to dismiss for failure to

21  state a claim, a plaintiff alleging a *Monell* violation therefore must '(1) *identify* the challenged pol-

22  icy/custom; (2) explain how the policy/custom *is deficient*; (3) explain how the policy/custom

23  *caused the plaintiff harm*; and (4) reflect how the policy custom *amounted to deliberate indiffer-*

24  *ence*, i.e. show how the deficiency involved was *obvious and the constitutional injury was likely to*

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 5
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1   occur.'" *Koistra v. Cty. of San Diego*, 2017 WL 4700073, at *7 (S.D. Cal. 2017) (quoting *Young v.*

2   *City of Visalia*, 687 F.Supp.2d 1155, 1163 (E.D. Cal. 2010))(emphasis added). As shown below, the

3   Complaint here nowhere provides this required "factual content that allows the court to draw the

4   reasonable inference that the defendant" Pierce County "is liable for the misconduct alleged." *Iqbal*,

5   556 U.S. at 678, citing *Twombly*, 550 U.S. at 556 (emphasis added).

6          a.   No County Policy or Custom Has Been Identified

7          As to the *first* element of "identifying the challenged policy/custom," the Complaint nowhere

8   "identif[ies] the challenged policy/custom" it actually challenges, *see* Dkt. # 1 at 3 – much less does

9   it identify the required: 1) "policy" (i.e. the specific "deliberate choice to follow a course of action

10  ... made from among various alternatives by the official or officials responsible for establishing final

11  policy with respect to the subject matter in question," *see Fogel v. Collins*, 531 F.3d 824, 834 (9th

12  Cir. 2008); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006), or 2) "custom" (*i.e.*

13  "widespread practice that, although not authorized by written law or express municipal policy, is so

14  permanent and well-settled as to constitute a custom or usage with the force of law" and "consti-

15  tutes the standard operating procedure of the local government entity.") *See St. Louis v. Praprotnik*,

16  485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th

17  Cir. 1990); *Bouman v. Block*, 940 F.2d 1211, 1231-32 (9th Cir. 1991); *Trevino v. Gates*, 99 F. 3d

18  911, 918 (9th Cir. 1996)(quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).

19         Instead, the Complaint *argues* that somehow "[a] deputy shooting and killing an unarmed indi-

20  vidual is likely reflective of a lack of training and or/supervision that amounts to deliberate indiffer-

21  ence." Dkt. # 1 at 3. However, "[t]o infer the existence of a city policy from the isolated misconduct

22  of a single, low-level officer, and then to hold the city liable on the basis of that policy, would

23  amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*".

24  *Tuttle*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment). Further, the

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 6
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  constitution is not automatically violated whenever there is a shooting and it is alleged the suspect

2  was later determined to have been unarmed, nor do such allegations somehow show an absence of

3  training and/or supervision – much less "deliberate indifference" – since a "reasonable perception of

4  imminent danger, even if mistaken, may be consistent with the reasonable use of deadly force." *Es-*

5  *tate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 Fed. Appx. 434, 439

6  (10th Cir. 2017). *See also e.g. Tennessee v. Garner*, 471 U.S. 1, 3 (1985) ("reasonable" for a police

7  to employ "deadly force to prevent the escape of an apparently unarmed suspected felon" where the

8  officer had "probable cause to believe that the suspect pose[d] a significant threat of death or seri-

9  ous physical injury to the officer or others."); *Lawrence v. Las Vegas Metro. Police Dep't*, 451 F.

10  Supp. 3d 1154, 1169 (D. Nev. 2020), appeal dismissed, 2020 WL 4000873 (9th Cir. 2020)("Given

11  the prior information that Bohanon had about Childress at that point, the Court does not find, given

12  these facts, that Bohanon's belief that the black object in Childress's hands was a gun was objec-

13  tively unreasonable" and thus shooting of unarmed suspect was reasonable)(*citing Gabales v. Cty.*

14  *of San Joaquin*, 2009 WL 2923037, at *10 (E.D. Cal. 2009)("The degree to which the suspect *ap-*

15  *pears to be a threat to others*, including the officers, is an important part of this calculus and re-

16  quires the officer to consider whether the suspect is armed, his level of aggression, and myriad other

17  facts that bear on the situation.")(citing *Graham v. Connor*, 490 U.S. 386, 394-97 1989)("the calcu-

18  lus of reasonableness must embody allowance for the fact that police officers are often forced to

19  make split-second judgments")); *Pettersen v. Cty. of Los Angeles*, 2015 WL 13333499, at *5 (C.D.

20  Cal. 2015)("If the person is armed – *or reasonably suspected of being harmed* – a furtive move-

21  ment, harrowing gesture, or serious verbal threat might create an immediate threat.")(*quoting*

22  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) *cert. denied*, 572 U.S. 1149 (2014))(emphasis

23  added). Indeed, precedent holds the use of deadly force can be constitutionally reasonable when an

24  otherwise unarmed but dangerously unstable person gets into and attempts to flee in a deputy's

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 7
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  police cruiser. *See Long v. Slaton*, 508 F.3d 576, 581-83 (11th Cir. 2007)(where deputy had reason

2  to believe suspect was dangerous based on his unstable state of mind, theft of the cruiser, and failure

3  to heed the deputy's warning to stop, "the law does not require officers in a tense and dangerous sit-

4  uation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect" because

5  "police need not have taken that chance and hoped for the best.")(cited with approval in *Mullenix v.*

6  *Luna*, 577 U.S. 7, 17 (2015)).

7      Similarly, the Complaint's claim the decedent "was the second person shot and killed by the de-

8  fendant deputy over a twelve-month timespan" also identifies no policy or custom. Dkt. # 11 at 3.

9  As a matter of law, "[l]iability for improper custom may not be predicated on isolated or sporadic

10  incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

11  the conduct has become a *traditional method of carrying out policy*." *Trevino*, 99 F.3d at 918 (cita-

12  tions omitted)(emphasis added). *See also Brown*, 520 U.S. at 409 (a pattern of constitutional viola-

13  tions is "ordinarily necessary to establish municipal culpability and causation"); *Thompson v. City*

14  *of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir.1989) ("Consistent with the commonly understood

15  meaning of custom, proof of random acts or isolated events [is] insufficient to establish custom.").

16  Thus a prior incident of even unconstitutional activity – which the earlier alleged incident is not

17  even claimed to be -- "is not sufficient to impose liability under *Monell*, *unless proof of the incident*

18  *includes proof that it was caused by an existing, unconstitutional municipal policy*," which must be

19  "separately proved." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)(emphasis added); *see*

20  *also Meehan v. Cnty. of L.A*., 856 F.2d 102 (9th Cir. 1988)(quoting the same). In short: "A single

21  prior incident is insufficient as a matter of law to establish liability on the part of the municipality"

22  and "it is the *Plaintiffs' burden* to articulate a factual basis that demonstrates *considerably more*

23  *proof* than a single incident." *Grove v. City of York*, 342 F.Supp.2d 291, 314-15 (M.D. Pa. 2004)

24  (emphasis added). *See also Wilson v. Oregon*, 2013 WL 6196983, at *11 (D. Or. 2013) (judgment

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 8
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

for municipality where only claimed pattern consisted of one man who allegedly sexually harassed two women); *Russell v. Town of Chesapeake*, 817 F.Supp. 38, 42 (S.D.W.Va. 1993)("Evidence of one prior incident … would not establish the pattern of 'persistent and widespread' constitutional violations necessary to demonstrate a 'custom'" and thus "isolated incidents" do "not establish an official custom or policy of a municipality"). Indeed: "an informal policy cannot ordinarily be established through" even "*a few* isolated incidents." *Negrete v. Sniff*, 2015 WL 12669983, at *6 (C.D. Cal. 2015)(quoting *Praprotnik*, 485 U.S. at 127 and *Christie v .Lopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)(emphasis added). *See also Motelewski v. Maui Police Dep't*, 2012 WL 3780188, at *3 (D. Haw. 2012), on reconsideration in part, 2013 WL 361762 (D. Haw. 2013) (two prior incidents were insufficient to demonstrate widespread pattern or custom in department).

Finally, the Complaint cannot avoid dismissal for failure to state facts showing a municipal policy or custom by instead asserting "[w]hether the County had proper training, procedure, and policies in place or its deputies on how to handle similar situations prior to resorting to shooting and killing unarmed citizens who are experiencing mental health trauma will be proven after discovery is concluded and at trial." Dkt. # 1 at 3. As a matter of law: "the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." *Iqbal,* 556 U.S. at 684–85 (*citing Twombly, supra*, at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process")). Instead, "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on a failure to state a claim for relief should … be resolved *before* discovery begins" since such "always presents a purely legal question; there are no issues of fact because the allegations contained in the pleadings are presumed to be true." *See Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1367 (11th Cir. 1997). *See also Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981)("Discovery should *follow the filing of a well-pleaded complaint. It is not a device to*

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 9
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1   enable a plaintiff to make a case when his complaint has failed to state a claim")(emphasis added).

2   Indeed, as *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1216 (11th Cir. 2007) holds:

3         [S]hould the plaintiff request leave to conduct discovery to support its assertion that the
          case is properly before the court, the court would deny such request. In such a situation,
4         the court would not reserve ruling on the motion to dismiss in order to allow the plaintiff
          to look for what the plaintiff should have had—but did not—before coming through the
5         courthouse doors, even though the court would have the inherent power to do so.

6   *See also Abrahams v. Young & Rubicam*, 979 F.Supp. 122, 129 (D.Conn.1997)("The purpose of

7   discovery is to find out *additional facts about a well-pleaded claim*, not to find out whether such a

8   claim *exists*.")(*quoting Stoner v. Walsh*, 772 F.Supp. 790, 800 (S.D.N.Y.1991))(emphasis added).

9         b.   Complaint Also Fails to Allege Facts of Remaining Requirements of Municipal Liability

10         As noted above, to avoid dismissal under FRCP 12(b)(6), a complaint not only must identify a

11  specific County policy or practice, but also must show *how* that policy/custom is *deficient*, that it

12  was the moving force behind *causing* plaintiff harm*,* and amounted to *deliberate indifference* ("i.e.

13  show how the deficiency involved was *obvious* and the constitutional injury *was likely to occur*.")

14  *See Koistra,* 2017 WL 4700073, at *7 (quoting *Young*, 687 F.Supp.2d at 1163)(emphasis added).

15  The Complaint here fails even to try to meet these three remaining necessary elements of *Monell*

16  liability – much less actually identify any underlying fact showing their presence. *See e.g. Moore v.*

17  *City of Orange*, 2017 WL 10518114, at *3 (C.D. Cal. 2017)(dismissing wrongful death and exces-

18  sive force claim because Plaintiff's "list" of alleged policies and customs "contains no 'allegations

19  of underlying facts,'" and thus Plaintiff "failed to meet the *Monell* pleading standard.")

20         Accordingly, the Complaint fails to state a federal claim upon which relief should be granted

21  against Pierce County. *See e.g. Dougherty v. City of Corvina*, 654 F.3d 892, 901 (9th Cir. 2011)

22  (complaint was a "formulaic recitation of a cause of action's elements" and no facts were alleged

23  concerning key elements of the *Monell* claims); *Gibson v. United States,* 781 F.2d 1334, 1338 (9th

24  Cir., 1986) *cert. denied,* 479 U.S. 1054 (1987)("Because plaintiffs do not allege facts sufficient to

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 10
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1   satisfy the *Monell* predicate for municipal liability, we affirm the dismissal of the City"); *Nevels v.*

2   *Maricopa Cnty,* 2012 WL 1623217, *3 (D.Ariz.,2012)(dismissal for failure to state a claim because

3   complaint "does not identify any specific policies or customs of Maricopa County or the City of

4   Phoenix or explain how those policies led to the deprivation of his constitutional rights.")(emphasis

5   added); *Arnold v. City of Lakewood,* 2011 WL 3207757, *2 (W.D. Wash. 2011)("Plaintiff does not

6   allege any facts that would support a conclusion that Officer Hall's conduct was the result of a City

7   policy" and hence the "alleged facts do not make a *Monell* claim plausible" so that "Plaintiff's

8   *Monell* claim against the City is DISMISSED"); *Weymouth v. Cty. of Maricopa*, 2019 WL 429894,

9   at *3 (D. Ariz. 2019)("Plaintiffs have failed to state a claim for relief in regard to Failure to Train,

10  and Count Seventeen is therefore dismissed.").

11      2.  No Federal Claim Is Stated Against Deputy Edwards

12          a.  <u>Complaint lacks the "sufficient facts" and "factual context" required to avoid dismissal</u>

13      The test for whether force is constitutionally excessive is "objective reasonableness." *Graham*,

14  490 U.S. at 398. In assessing reasonableness, courts must consider: (1) the severity of the crime at

15  issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and

16  (3) whether the suspect actively resisted arrest or attempted to escape. *Id*. at 396. The "standard re-

17  quires us to balance the amount of force applied against the need for that force." *Deorle v. Ruther-*

18  *ford,* 272 F.3d 1272, 1279 (9th Cir. 2001). This must be assessed from the perspective of a reasona-

19  ble officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact

20  that "police officers are often forced to make split-second judgments – in circumstances that are

21  tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

22  situation." *Graham*, 490 U.S. at 397. Here, however, such an analysis and balancing to decide if the

23  force was unnecessary in this "particular situation" is not possible because the complaint pleads

24  around the "particular situation" at issue by providing allegations only concerning the amount of

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 11
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1   force used and omitting all facts concerning the need for that force. Such provides neither "suffi-

2   cient facts" nor the "factual context" required to show force was constitutionally excessive. *See Iq-*

3   *bal*, 556 U.S. at 686; *Estate of Ronquillo*, 720 Fed. Appx. at 440 (suit by estate for deadly force dis-

4   missed under Rule 12(b)(6) because "plaintiff has not presented sufficient facts to establish that the

5   officers violated [decedent's] constitutional rights.")

6       Further, the minimalist facts alleged in the complaint fail to present "a plausible claim for re-

7   lief" because "the Federal Rules do not require courts to credit a complaint's conclusory statements

8   without reference to its *factual context*," *see Iqbal*, 556 U.S. at 686, since allegations "without *con-*

9   *text*, description, or factual support" are "no more than '[t]hreadbare recitals of the elements of a …

10  cause of action, supported by mere conclusory statements,' which do not meet the pleading standard

11  articulated in *Iqbal*." *Weymouth*, 2019 WL 429894, at * 3. Instead, a complaint must allege "enough

12  facts to state a claim to relief that is plausible on its face," *see Iqbal*, *id.* at 678 (quoting *Twombly*,

13  550 U.S. at 570), and "[d]etermining whether a complaint states a plausible claim for relief will ...

14  be a *context-specific* task that requires the reviewing court to draw on its judicial experience and

15  common sense." *Iqbal*, 556 U.S. at 679 (emphasis added). Because the instant complaint lacks "suf-

16  ficient facts" to provide the "factual context" relevant to the reasons for the use of force in this "par-

17  ticular situation," it does not allow the Court to perform the "context-specific task" necessary to

18  find the factors required for an excessive force claim under *Graham*.

19       b.   Resolution of Deputy Edwards' Qualified Immunity Requires A Reply To This Answer

20       The requirement that a complaint plead sufficient facts so as to state a plausible claim "is espe-

21  cially important in suits where Government-official defendants are entitled to assert the defense of

22  qualified immunity" because the "basic thrust of the qualified-immunity doctrine is to free officials

23  from the concerns of litigation, including 'avoidance of disruptive discovery.'" *See Iqbal*, 556 U.S.

24  at 685 (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)(KENNEDY, J., concurring in judg-

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 12
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1  ment). Indeed: "Qualified immunity is 'an entitlement *not* to stand trial *or face the other burdens of*

2  *litigation.*'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511

3  (1985)), *abrogated on other grounds* by *Pearson v. Callahan*, 555 U.S. 223 (2009))(emphasis

4  added). Thus it is "an immunity *from suit* rather than a mere defense to liability; and like an abso-

5  lute immunity, *it is effectively lost if a case is erroneously permitted to go to trial.*" *Id.* at 200–01

6  (quoting *Mitchell*, 472 U.S. at 526)(emphasis added). Further, Supreme Court decisions "make plain

7  that qualified immunity represents the norm." *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

8  *See also Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir.

9  2001)("When deciding whether a public official is immune from liability for acts performed in her

10  official capacity, qualified immunity is the general rule"). Government officials who perform dis-

11  cretionary functions generally are entitled to qualified immunity from liability for civil damages

12  "insofar as their conduct does not violate clearly established statutory or constitutional rights of

13  which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

14  For these reasons, the Supreme Court "repeatedly [has] stressed the importance of resolving im-

15  munity questions at the earliest possible stage in litigation." *Id.* at 201 (quoting *Hunter v. Bryant*,

16  502 U.S. 224, 227 (1991)(per curiam )). Thus, "the district court should resolve that threshold ques-

17  tion *before permitting discovery*" and "determine whether, assuming the truth of the plaintiff's alle-

18  gations, the official's conduct violated clearly established law." *Crawford-El v. Britton*, 523 U.S.

19  574, 598 (1998)(emphasis added). Though Court rules do not "require[] the plaintiff to anticipate

20  the immunity defense" in the complaint, *id.* at 595, still "the trial court must exercise its discretion

21  in a way that protects the substance of the qualified immunity defense … so that officials are not

22  subjected to unnecessary and burdensome discovery or trial proceedings." *Id*. at 597-98. Thus:

23      [The district court] has two primary options prior to permitting any discovery at all. First,
    the court may order a reply to the defendant's … answer …. Thus, the court may insist

24      that the plaintiff 'put forward specific, nonconclusory factual allegations' … in order to
    survive a prediscovery motion for dismissal or summary judgment. *Siegert* [500 U.S. at

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 13
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

236] (KENNEDY, J., concurring in judgment). …. Second, … the district court should resolve that threshold question before permitting discovery. *Harlow*, 457 U.S., at 818, 102 S.Ct., at 2738. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law. Because the former option of demanding more specific allegations of intent places no burden on the defendant-official, the district judge may choose that alternative before resolving the immunity question, which sometimes requires complicated analysis of legal issues.

*Id.* at 597-98.[1] Accordingly, so that Deputy Edwards' *immunity from suit* is not lost simply by artful pleading around the factual context for his use of force, it is respectfully requested the Court "order a reply to the defendant's … answer" and "insist that the plaintiff 'put forward specific, nonconclusory factual allegations'" providing the factual context of how "his conduct was unlawful *in the situation he confronted.*'" *See id.*; *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010)(quoting *Saucier*, 533 U.S. at 202)(emphasis added). *See also Anderson, supra.* ("it should first be determined whether the actions the [plaintiffs] allege [defendant] to have taken are actions that a reasonable officer could have believed lawful. If they are, then [defendant] is entitled to dismissal *prior to discovery.*")(emphasis added); *See also DiMartini v Ferrin*, 889 F.2d 922, 926 (9th Cir. 1989) ("The Supreme Court has held that until the threshold issue of immunity is resolved, discovery should not proceed"); *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)(upholding West. Dist. of Wash. stay of discovery pending resolution of qualified immunity).

B. COMPLAINT ALSO FAILS TO STATE A CLAIM UNDER WASHINGTON STATE LAW

Though the Complaint asserts "[t]his is a civil rights action brought by plaintiffs for excessive

---

[1] The Supreme Court also holds: "If the plaintiff's action survives these initial hurdles and is otherwise viable, the plaintiff ordinarily will be entitled to *some* discovery. Rule 26 vests the trial judge with broad discretion to *tailor discovery narrowly and to dictate the sequence of discovery*. …. [T]he judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible. *See Anderson* [*v. Creighton*, 483 U.S. 635, 646, n. 6 (1987)("if the actions [Defendant] claims he took are different from those the [Plaintiffs] allege (and are actions that a reasonable officer could have believed lawful), then discovery may be necessary before [Defendant's] motion for summary judgment on qualified immunity grounds can be resolved. Of course, *any such discovery should be tailored specifically to the question of [defendant's] qualified immunity*."]" *See Crawford-El*, 523 U.S. at 599–600 (emphasis added).

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 14
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

force," it also states "[t]his case arises from claims of excessive force, false arrest, unlawful seizure, tort of outrage, negligence and violation of RCW 49.60." Dkt. # 1 at 2. To the extent the Complaint intends to assert state claims of "excessive force, false arrest, unlawful seizure, tort of outrage, negligence and violation of RCW 49.60," such are not claims upon which relief can be granted under state law and the allegations of the complaint.

1.   State Law Precludes Claims of "Excessive force," "False arrest," or "Unlawful seizure" Here

First, under state law: "The use, attempt, or offer to use force upon or toward the person of another is not unlawful ... [w]henever necessarily used by a public officer in the performance of a legal duty...." RCW 9A.16.020(1). Thus, "a police officer making an arrest is justified in using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is *liable as such for assault and battery if unnecessary violence or excessive force* is used in accomplishing the arrest." *Boyles v. City of Kennewick*, 62 Wn. App. 174, 176 (1991). These are the same factual requirements applicable to any federal "civil rights" claim against the County and Deputy Edwards for use of force, and thus the same absence of the required "sufficient facts" and "factual context" to support a claim of direct County liability, or to show under the circumstances confronting Deputy Edwards his use of force here was "excessive," "false" or "unlawful," also precludes direct liability for either defendant as well as vicarious liability for the County under state law.

Second, regardless how the Complaint describes these claims, the "factual allegations in a complaint determine the applicable statute of limitations." *Schumacher v. City of Aberdeen*, 14 Wn.App. 2d 1062 (2020). Thus, "[w]here a given set of facts gives rise" to a particular cause of action, "it cannot be recharacterized as a [different] cause of action for statute of limitations purposes." *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 469 (1986). *See also Seely v. Gilbert*, 16 Wn.2d 611, 615 (1943) ("In drafting the second amended complaint, we note appellant endeavored to conceal the real cause of action and make it one for conspiracy. Appellant cannot evade the statute of

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 15
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

limitations by disguising her real cause of action by the form of her complaint.") In Washington, "an attempt, with unlawful force, to inflict bodily injuries upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented" is an "assault." *See Brower v. Ackerley*, 88 Wn. App. 87, 92 (1997). An intentional infliction of harmful bodily contact with a plaintiff is a "battery." *Morinaga v. Vue*, 85 Wn.App. 822, 834 (1997). Both are intentional torts, *Bundrick v. Stewart*, 128 Wn.App. 11, 18 (2005) (battery); *McKinney v. City of Tukwila*, 103 Wn. App. 391 (2000) (assault), and both are subject to a *two-year* statute of limitations. *Heckart v. City of Yakima*, 42 Wn.App. 38, 39 (1985). So too: "The tort of wrongful detention based on intentional conduct, to the extent recognized in Washington, would be subject to a two year statute of limitations," *see* RCW 4.16.130," while "torts of false arrest and false imprisonment are intentional torts also barred by the two year statute of limitations. RCW 4.16.100(1)." *State Farm Fire & Cas. Co. v. Justus*, 199 Wn.App. 435, 452, 398 P.3d 1258, 1266 (2017)(*citing Heckart*, 42 Wn.App. at 38-39).

Because the Complaint was *filed on February 19, 2021,* and alleges the incident at issue occurred *almost three years earlier on March 16, 2018*, any state claim for "excessive force, false arrest [or] unlawful seizure" is barred by the two year statute of limitations and should be dismissed.

2.   No Negligence Claim is Pled

First, the Complaint alleges "*the County* is liable for intentional torts or negligence" and that its "claim for negligence arises out of the duty owed to decedent William V. Langfitt, IV, *by the County* and by extension the defendant deputy who shot and killed him." Dkt. #1 at 2, 5 (emphasis added). However, there is no "underlying fact" of *any kind* alleged as to the County that could support a claim of direct County liability in negligence. *See id.* and *discussion supra.* at 4-11.

Second, the only acts alleged by the Complaint are intentional, not negligent. Indeed, the Complaint asserts its factual allegations concerning Deputy Edwards support a "civil rights action brought by plaintiffs for excessive force" and that it "bring[s] this action pursuant to 42 USC §1983

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 16
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

and the Fourth and Fourteenth Amendment." Dkt. # 1 at 2. In order prevail on a §1983 claim for un-

lawful seizure plaintiffs must demonstrate that defendant acted *intentionally*. *See Escalante v. City*

*of Tacoma*, 2016 WL 7375301, at *8 (W.D. Wash. 2016)(citing *Rengo v. Cobane*, 2013 WL

3294300 at *2 (W.D. Wash. 2013). In contrast:

> [N]egligence *excludes the idea of intentional wrong*; the absence of an intent or pur-
> pose to inflict the injury of which complaint is made is essential to the legal conception
> of negligence and is an element which distinguishes it from other torts. Where an in-
> tention to inflict the injury exists, whether that intention is actual or constructive only,
> the wrongful act is not negligent but is one of violence or aggression.

*See* 65 *C.J.S.* Negligence § 17 at 302 n. 1 (2010). Because "negligence claims cannot be based on

an intentional breach of a legal duty, Plaintiffs cannot maintain negligence claims for [Plaintiffs']

unlawful investigatory stop, or for their alleged use of unnecessary and improper force." *Escalante*,

*id.* Thus, the Complaint's "attempt to plead a cause of action for negligence against Defendants is,

in reality, an artfully pled claim of an intentional tort and *so must be dismissed*." *Garcia v. City of*

*Mcallen, Texas*, 7:19-CV-00068, 2020 WL 1660095, at *7 (S.D. Tex. 2020)(emphasis added).

Third, because the Complaint alleges intentional acts of false arrest and assault and battery, and

such are barred by statute of limitations, the complaint cannot revivify them by recharacterizing

them as "negligence" instead. *See e.g. Snow–Erlin v. United States*, 470 F.3d 804, 808–09 (9th Cir.

2006) (affirming district court's dismissal of plaintiff's action, which alleged that her late husband

was wrongly incarcerated due to "negligent miscalculation" of his release date, and holding that

plaintiff could not evade the statutory bar for false imprisonment claims "by suing for the damage

of false imprisonment under the label of negligence"); *Cline v. City of Seattle*, 2007 WL 2671019,

at *5 (W.D.Wash. 2007) (holding that, "to the extent Plaintiff's complaint can be construed as as-

serting state-law negligence claims, such claims would appear to be false arrest claims couched in

negligence terms and would be subject to the two-year statute of limitations for a false arrest

claim"); *Kinegak v. State of Alaska, Dep't of Corrs.*, 129 P.3d 887, 888 (Alaska 2006) (holding that

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 17
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1    prisoner could not overcome state's immunity from false imprisonment claim by pleading that state

2    department of corrections had "negligently failed to correctly compute plaintiff's release date");

3        3.   No Tort of Outrage Claim is Pled

4        To the extent the Complaint asserts a claim of "outrage" on behalf of decedent's parents, it fails

5    as a matter of law because it does not allege that either were present at the time of the incident in

6    question. *See* Dkt. # 1. Accordingly, no claim of outrage can be pled as to them. *See e.g. Reid v.*

7    *Pierce Cty.*, 136 Wn.2d 195, 203 (1998)("We agree with the County and hold that because Plaintiffs

8    … were not present when the conduct occurred, they may not maintain tort of outrage actions.")

9        Second, under Washington law, recovery for the tort of outrage is allowed only in the absence

10   of other tort remedies because allowing claims of both would be a double recovery. *See e.g. Brad-*

11   *ford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008) (citing *Rice v. Janovich*, 109

12   Wn. 2d 48, 61 (1987)(precluding recovery on outrage when damages for mental or emotional dis-

13   tress were already recoverable under plaintiff's assault claim)); *Hunter v. City of Fed. Way*, 2017

14   WL 6406019, at *4 (W.D. Wash. 2017)(same). Here, the Complaint seeks emotional damages for

15   the same facts it claims constitute both excessive force under §1983 and other state claims, and thus

16   the outrage claim should be dismissed.

17       Third, the Washington Supreme Court has not decided "whether outrage claims are governed

18   by the three-year statute of limitation, RCW 4.16.080(2)('for any other injury to the person or rights

19   of another not hereinafter enumerated'), … or the two-year statute of limitation, RCW 4.16.100 (ac-

20   tions for libel, slander, assault, assault and battery, or false imprisonment)." *See Doe v. Finch*, 133

21   Wn.2d 96, 101 (1997)(citing *St. Michelle v. Robinson*, 52 Wn.App. 309, 314 (1988); *Douchette v.*

22   *Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 809 (1991)). However, in the absence of a specialized

23   statute – the state Court of Appeals appears to apply to outrage claims the two year limitation period

24   for intentional torts. *Compare Douchette*, 117 Wn.2d at 809 ("the tort of outrage is subject to the

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 18
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main: (253) 798-6732 / Fax: (253) 798-6713

1   two-year statute of limitations")(citing *Rayburn v. Seattle*, 42 Wn.App. 163 (1985), *rev. denied* 105

2   Wn.2d 1007 (1986)) *with St. Michelle*, 52 Wn.App. at 314 (holding daughter's claim of outrage of

3   sex abuse by her father was subject to three year statute of limitations of RCW 4.16.340 (i.e. "Ac-

4   tions based on childhood sexual abuse")). In this case, the claim of outrage is based on the same al-

5   leged facts that are claimed to constitute assault and false arrest. *See* Dkt. # 1 at 6. Because assault

6   and battery are subject to a two year statute of limitations, *see* RCW 4.16.100, the instant claim of

7   outrage based thereon is subject to that two year limitation period also and therefore barred.

8   4.   No violation of RCW 49.60

9   RCW 49.60.030(1) provides a "right to be free from discrimination because of race, creed, color,

10   national origin, sex, honorably discharged veteran or military status, sexual orientation, or the pres-

11   ence of any sensory, mental, or physical disability or the use of a trained dog guide or service ani-

12   mal by a person with a disability is recognized as and declared to be a civil right."  Specifically, in

13   this context, the statute provides:

14   (a) The right to obtain and hold employment without discrimination;
(b) The right to the full enjoyment of any of the accommodations, advantages, facili-
15   ties, or privileges of any place of public resort, accommodation, assemblage, or amuse-
ment;
16   (c) The right to engage in real estate transactions without discrimination, including dis-
crimination against families with children;
(d) The right to engage in credit transactions without discrimination;
17   (e) The right to engage in insurance transactions or transactions with health mainte-
nance organizations without discrimination: PROVIDED, That a practice which is not
18   unlawful under RCW 48.30.300, 48.44.220, or 48.46.370 does not constitute an unfair
practice for the purposes of this subparagraph;
19   (f) The right to engage in commerce free from any discriminatory boycotts or black-
lists. Discriminatory boycotts or blacklists for purposes of this section shall be defined
20   as the formation or execution of any express or implied agreement, understanding, pol-
icy or contractual arrangement for economic benefit between any persons which is not
21   specifically authorized by the laws of the United States and which is required or im-
posed, either directly or indirectly, overtly or covertly, by a foreign government or for-
eign person in order to restrict, condition, prohibit, or interfere with or in order to ex-
22   clude any person or persons from any business relationship on the basis of race, color,
creed, religion, sex, honorably discharged veteran or military status, sexual orientation,
23   the presence of any sensory, mental, or physical disability, or the use of a trained dog
guide or service animal by a person with a disability, or national origin or lawful busi-
ness relationship: PROVIDED HOWEVER, That nothing herein contained shall pro-
24   hibit the use of boycotts as authorized by law pertaining to labor disputes and unfair

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 19
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

labor practices; and
(g) The right of a mother to breastfeed her child in any place of public resort, accommodation, assemblage, or amusement.

RCW 49.60.030(1).  The Complaint at issue asserts no fact alleging "discrimination because of race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability."  *Compare* id. *with* Dkt. # 1.

Accordingly, the Complaint also fails to state a claim under RCW 49.60 *et. seq*., and that claim should be dismissed as well.

## IV.  CONCLUSION

For the above stated reasons, Defendants Pierce County and Colby Edwards respectfully request the Court dismiss Plaintiffs' federal and state claims against them. Alternatively, as to any federal claim against Deputy Edwards, Defendants respectfully request the Court "order a reply to the defendant[s'] … answer" and "insist that the plaintiff[s] 'put forward specific, nonconclusory factual allegations'" providing the factual context of how Deputy Edwards' "conduct was unlawful in the situation he confronted.'"

DATED this 30th day of March, 2021.

MARY E. ROBNETT
Prosecuting Attorney
s/ DANIEL R. HAMILTON
DANIEL R. HAMILTON, WSBA # 14658
Pierce County Prosecutor / Civil
955 Tacoma Avenue South, Suite 301
Tacoma, WA  98402-2160
Ph: 253-798-7746 / Fax: 253-798-6713
dan.hamilton@piercecountywa.gov

s/ KRISTAL COWGER
KRISTAL COWGER, WSBA # 43079
Pierce County Prosecutor / Civil
955 Tacoma Avenue South, Suite 301
Tacoma, WA  98402-2160
Ph: 253-798-4265 / Fax: 253-798-6713
kristal.cowger@piercecountywa.gov

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 20
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713

1

## CERTIFICATE OF SERVICE

2

3       On March 30, 2021, I hereby certify that I electronically filed the foregoing
DEFENDANTS' FRCP 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to the
4       following:

5       Errin Loyal, I
        Loyal Law PLLC
6       errin@loyallawgroup.com

7       James Bible
        James Bible Law Group
8       jbiblesblaw@gmail.com

9       Jesse Valdez
        Valdez Lehman PLLC
10      jesse@valdezlehman.com

11

12                                              s/ JEANINE L. LANTZ
                                                JEANINE L. LANTZ
13                                              Legal Assistant
                                                Pierce County Prosecutor's Office
                                                Civil Division, Suite 301
14                                              955 Tacoma Avenue South
                                                Tacoma, WA 98402-2160
15                                              Ph:  253-798-6083 / Fax:  253-798-6713
                                                jeanine.lantz@piercecountywa.gov

16

17

18

19

20

21

22

23

24

DEFENDANTS' FRCP 12(c) MOTION
FOR JUDGMENT ON THE PLEADINGS - 21
MOP FINAL
USDC WAWD No. 3:21-cv-05122-BHS

Pierce County Prosecuting Attorney/Civil Division
955 Tacoma Avenue South, Suite 301
Tacoma, Washington 98402-2160
Main:  (253) 798-6732 / Fax:  (253) 798-6713