1

HONORABLE BENJAMIN H. SETTLE

2

3

4

5

6

7

8

UNITED STAETS DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10

11

WILLIAM V. LANGFITT III, individually, and as
executor of the Estate of William V. Langfitt, IV,
and PATRICIA E. LANGFITT, individually,

No.  3:21-cv-05122-BHS

12

Plaintiffs,

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS**

13

v.

14

**ORAL ARGUMENT REQUESTED**

PIERCE COUNTY, COLBY EDWARDS and
"JANE DOE" EDWARDS,

15

16

Defendants.

17

18

Nobody likes a game of "he said, she said," but far worse is the game of "we said, he's dead."

19

Sadly, this is too often what we face in police shooting cases like this one.   *See Cruz v. City of*

20

*Anaheim,* 765 F.3d 1076 (2014).

21

**STATEMENT OF FACTS**

22

23

On March 16, 2018, William "Billy" Langfitt IV was repeatedly shot by Pierce County Sheriff

24

Deputy Colby Edwards*.  See Plaintiff's Complaint page 4, para. 4.1*, Dkt. # 1.  Billy died as a result of

25

the numerous gunshot wounds that he received from the March 16, 2018 shooting.  *Id. para. 4.2.*  Billy

26

was unarmed and did not possess any weapons at the time he was shot and killed by Deputy Edwards.

27

28

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

*Id. para. 4.3.*  Defendants denied all of these allegations in their Answer.  *See Defendants' Answers page 1, para. 1* page 1, Dkt. #15.  Plaintiff's Fourth Cause of Action stated that Defendants were liable to all plaintiff for unlawful seizure.  *See Plaintiff's Complaint page 6, para. 5.4.*, Dkt. # 1.  Defendants, once again, denied an unlawful seizure occurred when Deputy Edwards shot William V. Langfitt, IV.  *See Defendants' Answers page 1, para. 1* page 1, Dkt. #15.  William V. Langfitt, IV did not make any verbal or physical threats to Deputy Edwards.  *See Plaintiff's Complaint page 5, para. 4.14*, Dkt. # 1.  Billy never touched Deputy Edwards.  *Id.* at para. 4.15.  William V. Langfitt, IV was holding nothing but a picture of his grandfather when he was shot and killed by Deputy Edwards.  *Id.  at page 4,  para. 4.6.*

Indeed, the plaintiffs contest whether William V. Langfitt, IV was armed and in possession of any weapons when he was shot and killed by Deputy Edwards.

## DISPUTED FACTS

Plaintiff's dispute and contest all facts cited by the Defendants as there is nothing to substantial their version of events, including but not limited, to the following facts and inferences claimed by Defendants:

- Defendants request the inferences be made and allowed that ***Plaintiff was holding a knife*** when he was shot and killed; See *Defendants' FRCP 12(c) Motion* page 2, lines 19. (Emphasis Added)

- Defendants request the inference be made and allowed that ***Plaintiff knew not only the location but had knowledge there was in fact a knife*** located in the Deputy Edwards vehicle;  *Id*. line 24. (Emphasis Added)

- Defendants request the inference be made and allowed that ***Plaintiff knew the location and could and did have access*** to a "fully loaded assault rifle" of Deputy Edwards inside Deputy Edwards vehicle.  *See Defendants' FRCP 12(c) Motion* page 2-3, lines 24-3. (Emphasis Added)

There are significant material facts in dispute, including but not limited to, items mentioned above and whether Defendant Edwards shot and killed Billy, and whether Defendants "seized" Billy

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

2

1
2
3

accordingly to the law recently expressed by the U.S. Supreme Court in *Torres v. Madrid et al*, 592 U.S. ___ (2021).  Nothing subtle about a bullet:  U.S. Supreme Court holding that police "seizure" includes shots fired at a fleeing suspect.  *Id.*

4

## **LEGAL ANAYSIS AND AUTHORITY**

5
6
7
8
9
10
11

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).  In seeking dismissal for failure to state a viable claim, a defendant thus bears the "very high burden" of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief.   *See Jackam v. Hospital Corp. of Am. Mideast, Ltd*., 800 F.2d 1577, 1579 (11th Cir.1986).

12
13
14
15
16
17
18
19
20
21
22

The rule 12(b)(6) motion addresses itself solely to the question of whether the complaint fails to state a claim and is not designed to correct inartistic pleadings or to force compliance with requirements of Rule 10 as to the force of the pleadings.  *Walker Process Equipment Inc., v. Food Machinery & Chemical Corp*., 382 U.S. 172, 174-75 (1965).  For the purpose of a motion to dismiss (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader.  *Swierkiewicz* v. *Sorema*, *N.A.* 122 S. Ct. 992 (2002).  On a motion to dismiss, a court must look to the essence of each claim and not merely the form in which it is pleaded.  *Calcutti v. SBU, Incorporated,* 224 F. Supp. 2d 641 (SDNY 2002).

23
24
25

The Supreme Court has stated:

In appraising the sufficiency of the complaint, we follow of course, the accepted rule that a complaint should not be dismissed for failure to state a claim *unless* it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief.

26
27

*Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99 (1957).

28

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

A claim has plausibility when the pleaded factual content allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbol*, 556 U.S. 662, 678 (2000)(quoting *Twobly*, 500 U.S. at 556); *see Flaherty v. Lang*, 199 F.3d 607 (2nd Cir. 1999.) (Reluctance to dismiss applies with greater force when plaintiff alleges civil rights violations). Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbol,* 556 U.S. 662 (2000).

*Twobly* does not require a court of the motion-to dismiss stage to consider whether the factual allegations are probably true, the Supreme Court made it clear that a court must take the allegations as true, no matter how skeptical the court may be. *Twombly,* 550 U.S. at 555.

Similarly, it need not appear that the plaintiff can obtain the particular relief prayed for in the complaint as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court. *U.S. V. Howell*, 318 F.2d 162 (9th Cir. 1963).

If the complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed; the proper remedy is a motion for a more definite statement under rule 12(e). *Id. see also Fed. R. Civ. Pro 12(e).* Similarly, an attempt to eliminate or strike improper or redundant matters from the complaint should be made under rule 12(f). *See Fed. R. Civ. Pro. 12(f); see also*n *Mahone v. Pierce Cty.*, 2011 WL 3298898 (W.D. Wash. 2011 (3:14-cv-05665-BHS)) (Plaintiff, pro se, filed a 1983 complaint against the Defendants. The court allowed the Plaintiff to amend his complaint, allowed discovery and several continuances in the case).

In the present case, the Defendants are asking this court chose to believe and adopt the Defendants version of event (nonmoving party). Rejecting Plaintiffs' version of these disputed facts is equivalent to suspending the presumption in favor of the non-moving party altogether. Defendants are

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

demanding this Court flip the burden and make inferences in their favor, which is inconsistent with Rule 12(b)(6). Defendants requested the following inferences be made in their favor and take as true as set forth in the disputed facts section above. This is not the standard of 12(c) or 12(b)(6). Plaintiffs' allegations must be taken as true and viewed in the light most favorable to them, and all reasonable inferences must be drawn in their favor. The plaintiffs allege and maintain that the Defendant's shot and killed an unarmed human being who was not a threat to them or anyone else.

Plaintiffs believe this Court can ascertain from what has been alleged that some relief may be granted to the Plaintiffs by this court. Thus, this Court should deny the Defendant's Motion for Judgment on the Pleadings because Plaintiff's complaint, facts alleged in the complaint, taken as true, do in fact entitle Plaintiffs to a legal remedy.

## Plaintiffs Allege §1983 Claims Against Pierce County and Makes a Proper Monell Claim

In *AE ex rel. Hernandez*, 666 F.3d. 631, (9th Cir. 2012), the plaintiff alleged a *Monell* claim against the County of Tulare in its complaint, in which the district held the complaint did not meet Rule 8. The Ninth Circuit Court of Appeals struggled and addressed the conflicts between cases and addressing Rule 8. *Id.* The Court of Appeals held that the district court abused its discretion when it dismissed the Plaintiffs section 1983 claim without leave to amend. *Id.* Defendants are correct that Plaintiffs are alleging respondent superior based on the officers' actions, in addition, to Monell claims. Pierce County may be liable for intentional torts under a theory of *respondent superior* if the employee was acting in the scope and course of employment. *See Kyreacos v. Smith,* 89 Wn.2d 425 (1977).

To prevail on his § 1983 claim, Plaintiff must show that each defendant deprived him of a right secured by the Constitution or laws of the United States while acting under color of law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006); *see also See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). To establish personal liability under § 1983, Plaintiff must show that each

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

5

defendant charged "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Stated differently, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  This can be shown by ***alleging facts establishing that the individual participated***, condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 716, 727-28 (6th Cir. 1995). (Emphasis Added).  To establish municipal liability under § 1983, Plaintiff must prove a constitutional violation by the individual officers.   In other words, "absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability." *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001)

Failure to train may amount to a policy of " deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  Similarly, a failure to supervise that is " sufficiently inadequate" may amount to " deliberate indifference." *Davis v. City of Ellensburg,* 869 F.2d 1230, 1235 (9th Cir.1989).

Here, Plaintiffs have shown by alleging facts that Deputy Edwards did actively participate in and was intimately involved with the shooting and killing of Billy.  Deputy Edwards pulled the trigger of the gun that fired bullet shots cutting short the life of Billy.   Deputy Edwards' conduct of killing Billy their only son caused the plaintiffs' injuries.   Moreover, it can be reasonably inferred that the Pierce County's custom of failing to train and/or or to supervise Deputy Edwards did amount to deliberate indifference.   Deputy Colby was involved in another shooting and killing prior to the tragic death of William V. Langfitt, IV less than 12 months before.   Here the need to train Deputy Edwards and others in addressing individuals experiencing and having a mental health crisis was obvious.   The

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

failure to properly train and assess the situation is a violation of constitution rights when the choice made by Deputy Edwards was to shoot and kill.

William V. Langfitt, IV was simply attempting to get help and assistance from Deputy Edwards when he was shot and killed within seconds after approaching Deputy Edwards.  Plaintiffs meet the threshold for a Monell claim as the policy or custom of failing to train amounts to deliberate indifference and shooting and killing of an individual within seconds was unnecessary, it caused great harm to the plaintiffs, and it could be viewed that the policy/custom amounted to deliberate indifference.  Moreover, it can be reasonably inferred that Pierce County is aware of and should follow a policy of violence de-escalation as well as training its police officers on mental health issues as is the customary training of the State of Washington.  Deputy Edwards violated Billy's constitutional right to a reasonable seizure when Deputy Edwards shot and killed Billy.  Billy was unarmed and experiencing a mental health episode, without first using non-lethal force; this also shows lack of adequate law enforcement training.  This Court should deny the City's Motion to dismiss any claims against the City for § 1983 liability.

**Excessive Force**

Under the Fourth Amendment claim, the amount of force used must be "objectively reasonable under the circumstances."  *See Drummond ex. rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1056 (9th Cir. 2003) (*citing Graham v. Conner,* 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L.Ed. 2d 443 (1989).  This analysis involves three steps.   First the Court must assess the severity of the intrusion on the individual's Fourth Amendment rights, by evaluating 'the type and amount of force inflicted."  *See Espinosa,* 598 F.3d at 537 (quoting *Miller v. Clark Cnty.,* 340 F.3d 959, 964, (9th Cir. 2003)).  "[E]ven where some force is justified, the amount actually used may be excessive."  *See Santos,* 287 F.3d at 853.  Second, the court evaluates the government's interest in the use of force.  *Graham,* 490 U.S. at 396, 109 S. Ct. 1865.  Finally, the court must "balance the gravity of the intrusion on the individual

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

against the government's need for that intrusion." *Miller,* 340 F.3d at 964.  These factors, however, are not exclusive.  *See Bryan v. MacPherson,* 630 F.3d 805, 826, (9th Cir. 2010).  We "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed *Graham'" Id.* (*quoting Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir. 1994)).  Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed.  *See e.g. Bryan,* 630 F.3d at 831, *Deorle,* 272 F.3d at 1282-83 (9th Cir. 2010.)  ([t]he problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense.) *Id*.

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.) (en banc ), *cert. denied*, 545 U.S. 1128, 125 S.Ct. 2938, 162 L.Ed.2d 866 (2005) (first alteration in original); *see Glenn v. Wash. Cty*., 673 F.3d 864, 871 (9th Cir. 2011). "This principle applies with particular force where," as here, "the only witness other than the officers was killed during the encounter." *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir.) (*en banc ), cert. denied*, —— U.S. ——, 135 S.Ct. 676, 190 L.Ed.2d 389 (2014).

"In such cases, we must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story ... is unable to testify." Id. (internal quotation marks omitted).  "Accordingly, we carefully examine all evidence in the record, such as medical reports,

contemporaneous statements by the officer and the available physical evidence ... to determine whether the officer's story is internally inconsistent with other known facts." *Id.* (internal quotation marks omitted); *See, e.g., Cruz v. City of Anaheim*, 765 F.3d 1076, 1079-80 (9th Cir. 2014) (fact that no gun was found on decedent cast doubt on officers' account that decedent reached for waistband such that "jury could ... reasonably conclude that the officers lied") (internal quotation marks omitted).  *See Wallisa v. City of Hesparia*, 369 F.Supp.3d 990 (C.D. Cal., 2019)(Court denied Defendants Motion for Summary Judgment and Qualified Immunity as there were issues of facts as a reasonable jury could conclude Plaintiff was not an immediate threat and officers used excessive force.)

**Pierce County Deputies, including but not limited to Deputy Edward Colby, were acting under color of state law when he used excessive force on William V. Langfitt, IV**

The language of § 1983 as originally passed is as follows:
[A]*ny person who,* under color of any law, statute, ordinance, regulation, custom or usage of any State, *shall subject, or cause to be subjected*, any person…to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statue, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress…(emphasis added).

*Monell v. New York City Dept. of Social Services,* 436 U.S. 665, 691-92 (1978).  Under "color" of law means under the "pretense" of law.  *Screws v. U.S.,* 325 U.S. 91, 111 (1945) (police officers acting under color of law because authorized to act, even though not authorized to use excessive force.) Acts of police officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.  If, as suggested, the statute was designed to embrace only action, which the government in fact authorized, the words "under color of any law" were hardly apt words to express the idea.  *Screws,* 325 U.S. at 111.  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Conner,* 490 U.S. 38, 393-394 (citing *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979).  The use of force by a law enforcement officer violates the Fourth Amendment if the force is unreasonable given all the "relevant circumstances." *Hammer v. Gross,* 932 F.2d 842, 846 (9th Cir. 1991).

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

The use of deadly force, in particular, "implicates the highest level of Fourth Amendment interests." *A.K.H. ex. rel. Landeros v. City of Tustin,* 837 1005, 1011 (9th Cir. 2016).

**Deadly Force**

In the deadly force context, **courts cannot "simply accept what may be a self-serving account by the police officer**." (Emphasis Added) *See Cruz v. City of Anaheim,* 765 F.3d 1076, 1079 (9th Cir. 2014) *citing Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.1994).  Because the person most likely to rebut the officers' version of events — the one killed — can't testify, "[t]he judge must carefully examine all the evidence in the record ... to determine whether the officer's story is internally consistent and consistent with other known facts." *Id.; see also Gonzalez v. City of Anaheim,* 747 F.3d 789, 794-95 (9th Cir.2014) (en banc). This includes "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Scott,* 39 F.3d at 915.  In *Cruz v. City of Anaheim*, 765 F.3d 1076 (2014), an informant told police officer Nathan Stauber that Caesar Cruz was a gang member who sold methamphetamine and carried a gun.  *Id*. at 1077.  Later the informant told Stauber where Cruz was, what his vehicle looked like and that he was armed with a nine-millimeter.  *Id.* at 1078.

That informant also reported that Cruz was carrying the gun in his waistband and had made it clear that "he was not going back to prison."  *Id.*  Stauber relayed this message to other officers and they converged on Cruz's location with multiple police vehicles, both marked and unmarked.  *Id.*  Cruz had a broken taillight, so they executed a traffic stop.  *Id.*  Cruz pulled into a Walmart parking lot, and police surrounded him with their vehicles.  *Id.*  Cruz attempted to escape, backing his SUV into one of the marked partial cars in the process.  *Id.*  Cruz eventually stopped, and the officers got out of their vehicles with weapons drawn.  *Id.*  Cruz opened his door, and the police shouted at him to get on the ground as he was emerging from the vehicle.  *Id.*  According to four of the officers, he ignored their commands and instead reached for the waistband of his pants.  *Id.*  Fearing that he was reaching for a gun, all five officers opened fire.  *Id.*  They fired about twenty shots in two to three seconds.  *Id.*  A

bystander, Norman Harms, witnessed most of the event from the other side of Cruz's vehicle, but he could only see Cruz's feet and the top of his head at the time of the shooting, so he didn't see whether Cruz reached for his waistband.  *Id.*  After they ceased firing, the officers approached Cruz's body to find it tangled in his seat belt and hanging from it.  *Id*.  After they cut the body loose, they found no weapon on it, but a loaded nine-millimeter was later recovered from the passenger seat.  *Id.*  The district court granted summary judgment to defendants on all claims, finding that Cruz's decedents hadn't presented anything to contest the officers' version of events.  *Id.*

The Ninth Circuit Court of Appeals held that the district court erred in ruling that only an unreasonable or speculation jury could disbelieve the four officer's version of events and reversed and remanded the case back to the district court.  *Id.* at 1080-81.  The court reversed the district court's decision as to Monell as well to certain defendants.  *Id*.  The district court wrongly believed the question it was posed with was a one simple question: Did the police see Cruz reach for his waistband? *Id*. at 1079.  If they did, they were entitled to shoot; if they didn't, they weren't.  *Id.*

However, the 9th Circuit Court of Appeals correctly restated the question posed for a judge ruling on the officers' motion for summary judgment, this translates to a different question: "**Could any reasonable jury find it more likely than not that Cruz *didn't* reach for his waistband?**" *Id. (Emphasis Added).*  The Court held, in this case, there's circumstantial evidence that could give a reasonable jury pause.  *Id.* The court stated, the most obvious is the fact that Cruz didn't have a gun on him, so why would he have reached for his waistband? *Id.*  Cruz making a gesture of reaching for his gun when no gun is there makes no sense whatsoever.  *Id.*  A jury may doubt that Cruz did this.  *Id.* A jury can also reasonably conclude that the officers lied.  *Id.* at 1080.

A jury might find implausible other aspects of the officers' story.  *Id.*  For starters, *four* of the officers said they saw Cruz reach for his waistband.  *Id.*  A jury might be skeptical that four pairs of

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

11

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

eyes had a line of sight to Cruz's hand as he stood between the open car door and the SUV. *Id*. There is also the fact that Cruz was left-handed, yet two officers attested that they saw Cruz reach for his waistband with his right hand. *Id*. A reasonable jury could doubt that Cruz would have reached for a non-existent weapon with his off hand. *Id*. Then there is the officers' claim that Cruz had "exited" the Suburban, and "stood in the doorway," but after he was killed they had to cut him free from his seat belt because he was "suspended" by it. *Id*. How does a man who has "emerged fully" from a vehicle, and "turn[ed] to face forward," end up hanging from his seat belt after he's shot? *Id*. Maybe it's possible. *Id.* But it's also possible that the officers didn't wait for Cruz to exit his car — or reach for his waistband — and simply opened fire on a man who was trying to comply with their instructions to "[g]et down on the ground." *Id*. The testimony of the only non-police eyewitness, Norman Harms, indicates that Cruz's feet indeed made it out of the car, but that Cruz was "slipping on the ground, like kind of falling down," as if he were "tripping." *Id*. This paints a different picture than the officers' testimony that Cruz had fully emerged from his SUV and was poised to attack. *Id*.

Based on Harms's testimony, a jury might find that Cruz was trying to get out of the car (as he was ordered to do multiple times after he opened his door) but got caught in his seat belt. *Id*. Were a jury to believe this version of events — which seems no less likely than a man shot while standing next to a vehicle becoming suspended by a seat belt — this would certainly cast doubt on the officers' credibility and lead the jury to find for plaintiffs. *Id*. The court further held, we make no determination about the officers' credibility, because that's not our decision to make. *Id.* We leave it to the jury. *Id*.

This case is similar to *Cruz v. City of Anaheim,* as there is circumstantial evidence that could give a reasonable jury to pause. The same rationale in *Cruz v. City of Anaheim* applies here. First, the most obvious is the fact, similar to Cruz, William V. Langfitt, IV didn't have a gun, knife or any

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

weapons on him, so could any reasonable jury find it more likely than not that he didn't pose a threat to Deputy Edwards because Billy was unarmed and did not have any weapons on him when he was shot and killed.  Like Cruz, Defendants allege and imply that Billy made threatening actions to Deputy Edwards when he had no weapons on him makes no sense whatsoever.  A jury may doubt that Billy did this at all, and could find that he was suffering from a health mental issue and was seeking assistance.  Finally, a jury can also reasonably conclude that the Deputy Edwards lied.

This court should not simply accept what may be a self-serving account by the Deputy Edwards.  A jury may be skeptical that Billy had actual knowledge and knew the location of the knife and other weapons in Deputy Edwards vehicle.  Lastly, a jury could reasonably believe that William V. Langfitt, IV was heading towards Deputy Edwards for help and assistance - It's possible that the Deputy Edwards didn't wait for Billy — and simply opened fire on a man who was suffering from a mental health issue.  William V. Langfitt, IV was an innocent, unarmed man having a mental episode who was unreasonably gunned down by Deputy Edwards.

Defendants imply and even suggest that William V. Langfitt, IV actions were threatening, with no evidence to support this version of events, which the Plaintiffs contest as they do not believe Billy's actions were threatening.  Defendants killed Billy, IV the person most likely to rebut the officers' version of events –was shot and is dead – he can't testify.

This court should rule similar to *Cruz v. City of Anaheim,* in which the Court held that there is circumstantial evidence that could give a reasonable jury to pause, and deny defendant's motion for judgment and leave the decision to the jury to decide.

## Qualified Immunity

Plaintiff do not believe qualified immunity is applicable given there are disputes between the parties and facts must be viewed in favor of the Plaintiffs.  Moreover, Plaintiffs have yet to conduct

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

13

discovery, and it Plaintiffs' believe that qualified immunity will not apply after it is allowed to conduct discovery.  Nevertheless, the Plaintiffs will address qualified immunity.

In evaluating qualified immunity, courts ask two questions: (1) whether, taking the facts in the light most favorable to the nonmoving party, the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *See Saucier v. Katz,* 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Under the Fourth Amendment, the amount of force used must be "objectively reasonable under the circumstances."  *See also Drummond ex rel. Drummond v. City of Anaheim,* 343 F.3d 1052, 1056 (9th Cir. 2003)(*citing Graham v. Conner,* 490 U.S.  386, 396 (1989)); *See Cruz v. City of Anaheim,* 765 F.3d 1076, 1079 (9th Cir. 2014) n. 3(In the usual case, we review the record "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham v. Conner,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d. 443 (1989); *Wilkinson v. Torres,* 610 F.3d 546, 551 (9th Cir. 2010)(explaining that "the critical inquiry is what [the officer] perceived").  So that fact that Cruz did not have a gun on him normally wouldn't factor into the reasonableness analysis because the officers couldn't know what was (or wasn't) underneath Cruz' waistband.  But, because the officers killed Cruz, we must examine whether the officers accounts are "consistent with other known facts." *Scott,* 39 F.3d at 915.  One of those facts is that no gun was found on Cruz (though a gun was found – with safety on – on the passenger's seat.)  Because the excessive force inquire ordinarily "requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," the Ninth Circuit has emphasized that "summary judgment…in excessive force cases should be granted sparingly."  *See Smith v. City of Hemet,* 394 F.3d 689, 701 (9th Cir. 2005)(en banc.)  "[A] decision on qualified

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P:  425.458.4415

1    immunity will be premature when there are unresolved disputes of historical fact relevant to the

2    immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 15 (3d Cir. 2002).

3            At the time of the shooting, it was clearly established that officers may not use deadly force

4    against a person who is armed but cannot be reasonably be perceived to be taking any furtive,

5    harrowing, or threatening actions.  *See George v Morris, 736 F.3d 829, 838 (9th Cir. 2013).*  This is

6    true in which the suspect has allegedly "committed a violent crime in the immediate past."  *See Harris*

7    *v. Roderick, 126 F.3d 1189, 1203-04 (9th Cir. 1997); See also N.E.M. et. al. v. City of Salinas 5:14-cv-*

8    *05598 (9th Cir Court of Appeals 2019)(Court affirmed district Court that denied Defendants Motion*

9    *for Summary Judgment and officers request for qualified immunity as it must view all facts in  favor of*

10   *the non-moving party.)*

11

12           This Court must analyze whether the Defendants are entitled to qualified immunity based on

13   whether any reasonable jury could find it more likely than not that William V. Langfitt, IV's actions

14   were threatening?  Again, in the deadly force context, courts cannot simply accept what may be a self-

15   serving account by the deputy as set forth above.  In this case, when evaluating the totality of

16   circumstances, the claims and inferences of the defendants are clearly discredited.  William V.

17   Langfitt, IV did not pose an immediate threat to the safety of Deputy Edwards or others.  Further,

18   William V. Langfitt, IV did not take any actions that would justify Deputy Edward's use of force in

19   this case.  There is no evidence in the record that shows or suggest an actual, immediate threat to

20   anyone from an objective perspective.  *See Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir.

21   2001)("[A] simple statement by an officer that he fears for his safety or safety of others is not enough;

22   there must be objective factors to justify such a concern.").  There is no evidence that William V.

23   Langfitt, IV did in fact take any steps towards the officers in a threatening manner.  William V.

24   Langfitt, IV did not have any weapons on him when he was shot and killed by Deputy Edwards.

25

26

27

28   Plaintiff's Response to Defendant's                                        **VALDEZ LEHMAN, PLLC**
     Motion 12(c) For Judgment on Pleadings                                    14205 SE 36TH St. Ste 100
                                                                               Bellevue, WA  98006
                                                                               P: 425.458.4415

Because Defendants, including but not limited to Deputy Edwards used excessive force when shooting and killing William V. Langfitt, IV, they had fair warning that their use force violated William V. Langfitt, IV's Fourth Amendment rights, they are not entitled to qualified immunity. Thus, they fail the first prong of qualified immunity. Defendants fail the second prong of qualified immunity because it was clearly established that shooting and killing William V. Langfitt, IV was excessive, and therefore unconstitutional, and William V. Langfitt, IV's right was clearly established at the time of the challenged conduct, such that Pierce County and Deputy Edwards would have understood that what they were doing violates that right.

**Plaintiffs State A Claim For Negligence Upon Which Relief Can Be Granted As Some Conduct Could Be Intentional and Negligence For Other Conduct**

Plaintiffs Complaint is premised on intentional acts of Deputy Colby Edwards, which some of the said actions could also be deemed negligent. Plaintiffs have alleged that Deputy Colby Edwards committed intentional torts and some of those acts and omissions were also negligent. The Washington Supreme allowed this in *Cesar Beltran-Serrrano et. al. Petitioners v. City of Tacoma,* 193 Wn. 2d 53 (2019) (Plaintiff, a mentally ill homeless man, who was shot multiple times by a police officer, could pursue both an intentional tort and a negligence action under Wash. Super. Ct. Civ. R. 8(e)(2) against the city, because the fact that the officer's conduct may have constituted assault and battery did not preclude a negligence claim premised on the officer's alleged failure to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force. *Id.*

Washington courts have held in negligence cases that they look at the result of the direct contact of the officer with the individual, not the performance of a general public duty. *See Garnett v. City of Bellevue,* 59 Wn. App. 281, 286 796 P.2d 782 (1990). In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA 98006
P: 425.458.4415

harm.  *See O'Donohue v. Riggs,* 73 Wash. 2d. 814, 440 P.2d 823 (1968)(Plaintiff can establish use of force claim upon showing that someone unintentionally but carelessly used excessive force).  In Washington, the public duty doctrine defines the four instances under which a governmental entity may be found to owe a statutory or common law duty to a particular member of the public, namely…(iv) a special relationship. *See Cummins v. Lewis County,* 156 Wash.2d 844, 853 & n. 7, 133 P.3d 458 (2006).   Under this exception, "special relationship", a plaintiff may establish the presence of "a duty owed to the injured person as an individual" by showing "that a 'special relationship' exists between the plaintiff and the governmental body." *Torres v. City of Anacortes*, 97 Wash. App. At 73-74, 981 P.2d 891 (1999).  In addition, as with the other exceptions, this "special relationship inquiry" acts as "a 'focusing tool' used to ensure that the duty asserted is specifically focused on the claimant and is not merely a general duty to the public at large." *Id.* at 74, 981 P.2d 891.  Police officers have a common law duty to avoid the foreseeable consequences of their actions.  "The distinction between mandated duties and common law duties is important because duties imposed by common law are owed to all those foreseeably harmed by the breach of the duty."  *Munich v. Skagit Emergency Commc'rn Ctr.,* 175 Wn. 2d 871, 891, 288 P.3d 328 (2012).  Harm is foreseeable when the hazard or injury at issue is well within the general filed of danger covered by the duty.  *McKown v. Simon Prop. Grp., Inc.,* 182 Wn.2d 752 (2015).  The general rule is that "[f]orseeability is normally an issue of the trier of fact and will be decided as a matter of law only where reasonable minds cannot differ." *Schooley v. Pinch's Deli Mkt., Inc.,* 134 Wash.2d 468 (1998).

Specifically, the common law duty that Deputy Edwards owed to William V. Langfitt, IV was duty to act without negligence once they chose to take affirmative action to interact with William V. Langfitt, IV.  Where government officers act, it must avoid misfeasance.  "Under common law, a defendant owes a plaintiff the duty to exercise reasonable care if (1) the defendant, by act or

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

misfeasance, poses a risk of harm to the plaintiff, as where the defendant actively creates or increases peril and exposes the plaintiff to it; or (2) the defendant, by omission or nonfeasance, fails to prevent harm to the plaintiff despite an obligation to do so, as where the defendant passively tolerates peril after voluntarily assuming responsibility to protect the plaintiff from it." *Mita v. Guardsmark, LLC,* 182 Wn. App. 76, 84, 328 P.3d 962 (2014).  When public officials "do act, they have a duty to act with reasonable care," and the public duty doctrine does not bar claims for negligence." *Washburn v. City of Federal Way,* 178 Wn.2d 732, 758, 310 P.3d 1275 (2013).

In the complaint, the Plaintiffs clearly allege that William V. Langfitt, IV was unarmed and did not possess any weapons at the time he was shot by Deputy Edwards.  Billy was holding nothing but a picture of his grandfather in his hand at the time he was shot.  No weapons were found on Billy at the time he was shot and killed.  William V. Langfitt, IV never touched Deputy Colby Edwards.  Deputy Edwards pulled out his gun, aimed it at William V. Langfitt, IV fired it and killed Billy.  Notably, Deputy Edwards flung open his patrol car and left the door open to his vehicle allowing anyone access to the vehicle and its contents inside.

Under the set of facts set forth in the complaint, Plaintiffs believe they allege facts that, taken as true, support their claim for negligence.  In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the harm.

It is Plaintiffs' position that Defendants breached their duty as they owed a duty to William V. Langfitt, IV as an individual because he was no longer being treated as the public in general given that Deputy Edwards had drawn his weapon on him.  Plaintiffs believe that when an officer aims a gun and points it at a civilian and commands are given to that civilian which are to be obeyed and it appears the civilian is attempting to comply with those commands or not given sufficient time to comply, then a

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

special relationship does in fact exist.  Deputy Edwards had direct interaction with Billy, this is not and cannot be a breach of a generalized public duty.  Defendants owed Billy a duty in tort to exercise reasonable care.  Like the court in *Beltrano-Serrano*, this court should rule that the public duty doctrine does not prevent the Defendants from being found liable.  *See Cesar Beltran-Serrrano et. al. Petitioners v. City of Tacoma,* 193 Wn. 2d 53 (2019)

In this case, Defendants owed a duty to Billy given the special relationship as set forth above. Defendants were negligent as they failed to exercise reasonable care as a reasonably prudent person would have known that Billy was experiencing a mental health crisis.  Defendants took no actions to negotiate or de-escalate the situation.  Defendants left their vehicle door with access to all contents inside of it.   Defendants breached that duty and caused resulting in William V. Langfitt, IV's death and were the proximate cause of his death.  Defendants' negligence was the proximate cause of William V. Langfitt, IV's.  The jury must decide whether it was foreseeable that Defendants could cause and create this chaotic situation – leaving a door open then shooting and killing an individual experiencing a mental health episode for entering the door left open by Defendants.  Discovery has not been conducted and Plaintiffs' are unaware of the Defendants manuals of dealing with this type of situation -whether it is standard operating procedure to always leave doors open to deputy vehicles allowing access to all types of weapons when dealing with an individual experiencing a mental health episode.   Thus, the Court should allow this claim to proceed.

### Plaintiff State A Claim For Violation of the Washington Law Against Discrimination Where Plaintiff Does Meet the Essential Elements Of The Statute

Plaintiffs' Sixth Cause of Action lies under the Washington Law Against Discrimination, RCW 49.60.030 *et seq.* ("WLAD") (Dkt 6, ¶ 5.6). WLAD declares that each person has a right to be free from discrimination based on, among other things, race, creed, color, national origin, and mental disability. Wash. Rev. Code § 49.60.030 (West 2018).

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

19

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P:  425.458.4415

RCW 49.60.010 provides:

> "This chapter shall be known as the 'law against discrimination'. It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state…."
> RCW 49.60.010.

The Court of Appeals liberally construes Washington's law against discrimination to achieve its purpose of eliminating and preventing discrimination. *See Griffith v. Boise Cascade Inc.,* 111 Wash. App. 436, 45 P.3d. 589 (2002).

In *McKinney v. City of Tukwila*, 103 Wash. App. 391 (2000), white police officers and city [defendants] were not liable on claim asserted under state Law Against Discrimination by African-Americans whose vehicle was detained in park following a report that vehicle's occupants might be connected to armed burglary that had just occurred; ***there was no evidence*** that the officer who requested that the car to be stopped knew its occupants were African-American, and mere fact that white people in park were not detained did not show detention was motivated by race. (Emphasis added)  An action for discrimination under RCW 49.60.215 requires a showing that the unequal treatment was motivated by race or mental sensory. *See McKinney v. City of Tukwila, citing Evergreen Sch. Dist. No. 114 v. Human Rights Comm'n*, 39 Wn. App. 763, 773, 695 P.2d 999 (1985).

In this case, there is evidence that Deputy Colby knew that William V. Langfitt IV was suffering from mental health crisis.  William V. Langfitt, IV was a male suffering from a mental health issue that was made known to the 911 dispatch.  Plaintiffs believe that this mental handicap was a motivating factor in the actions that Deputy Colby took against Billy.  Defendants did engage in discrimination against Billy when Deputy Edwards exercised deadly force when he shot and killed

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

Billy -a mental health victim.  The Plaintiffs maintain that mental health played a critical role relation in how the Pierce County and its Deputy Edward interacted with William V. Langfitt, IV and ultimately killed him.  This claim should be allowed to proceed.  Plaintiffs' further note that they have made a federal 1983 claim involving inequitable treatment based on mental health that should also be allowed to proceed to trial.

**Plaintiffs State a Claim Against Deputy Edward Colby**

Deputy Edward Colby is identified as a Defendant in this case.  There are sufficient allegations against Deputy Colby to give rise to a plausible claim for relief.  There are factual allegations against Deputy Colby, that formed the basis of this case, in which he working as a Pierce County Sheriff and arrived on the scene given by the 911 dispatch. *See Plaintiff's Complaint*, page 4, para. 4.7-12 (Dkt. 1).  Deputy Colby had his gun trained on decedent and shot and killed William V. Langfitt, IV. *Id.* para. 4.12.  After shooting William V. Langfitt IV, Deputy Colby rolled his body over and handcuffed him.  (Dkt. 6 at para. 4.16).  William V. Langfitt IV was ultimately shot and killed while attempting to get assistance and help from Deputy Colby.  These factual allegations give rise to a cause of action against Deputy Colby.  Several of the Plaintiffs' causes of action can extend to alleged actions of Deputy Colby.  Deputy Edwards, presumably a properly trained law enforcement officer, saw Billy as a threat worth eliminating altogether, even though dispatch was told, and this critical information was relayed to Deputy Edwards that William V. Langfitt was unarmed and suffering a mental health episode.  Therefore, the Court should deny the Defendants request to dismiss claims against Deputy Colby.

**Plaintiffs Allege a False Arrest Where Mr. Langfitt IV Was Arrested And Where Plaintiffs Also Bring An Unlawful Seizure Claim When He Was Shot**

The U.S. Supreme Court held that the Court of Appeals [10th Cir.] erred in ruling that shooting an individual was not considered a "seizure" under the 4th Amendment. *Torres v. Madrid et al*, 592

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

U.S. ___ (2021).  In *Torres,* the Plaintiff was fleeing from the officers when officers attempted to serve her with an arrest warrant.  *Id.*   The officers shot and fired bullets at Torres and hit her.  *Id.*  The Court held that that police seizure includes shots fired by police at a fleeing suspect.  *Id*.  The Court held officers seized Torres by shooting her with the intent to restrain her movement.  *Id*.

Plaintiffs are pleading all three claims, state law claims of false arrest, unlawful seizure, federal claims under § 1983.  The three claims may appear duplicative, but each claim is distinct, separate and a different claim.  It appears that Defendants do not concede that Billy was seized when he was shot, which challenges and contradicts the U.S. Supreme Court recent ruling in *Torres*.  Here, Deputy Edwards pointed his gun at William V. Langfitt, IV and shot and killed him.    Plaintiffs' position is that Deputy Edwards had the intent to physically restrain William V. Langfitt, IV because that is why he fired shots at him.  Like the Torres Court, this Court should find that Defendants seized William V. Langfitt, IV when they fired bullets and hit him, which caused his death.  Moreover, Defendants and are silent on whether Billy was arrested when Deputy Edwards rolled his body over and handcuffed him.  The Court should allow Plaintiff's Third and Fourth Causes of Action as pleaded.

**Officers violated William V. Langfitt III and Patricia E. Langfitt's Fourteenth Amendment Rights by depriving them of their familial relationship with William V. Langfitt IV**

The parents and child of a victim of an unlawful police killing have a claim for deprivation of familial relationship under the due process clause of the Fourteenth Amendment.  *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (parents).   Official conduct that "shocks the conscience" in depriving family members of that relationship is a due process violation. *Wilkinson*, 610 F.3d at 554.  Where the circumstances of the conduct are such that "actual deliberation [was] practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id.* "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

Where § 1983 does not provide suitable remedies for constitutional violations, the federal courts are instructed to turn to state law "so far as the same is not inconsistent with the Constitution and laws of the United States."  42 U.S.C. § 1988(a).

In *Robertson v. Wegmann,* 436 U.S. 584, 594 98 S. Ct. 1991, 56 L.Ed.2d 554 (1978), the Supreme Court held that state law on survivorship of causes of action should control so long as that state law is not generally "inhospitable to survival of § 1983 actions…[and] has no adverse effect on the policies underlying § 1983."  The Supreme Court, however, has still not resolved the issue of whether wrongful death cause of action may be pursued under § 1983.  Nevertheless "[c]onfronted with standing problems, federal courts have 'borrowed' the wrongful death remedy as well as the survival remedy from state statutes under the vehicle of 42 U.S.C. § 1988, declining to apply state limitations on recovery if necessary to fairly compensate victims of constitutional deprivations and to deter police misconduct."  *Davis v. City of Ellensburg,* 651 F.Supp. 1248, 1253 (E.D. Wash. 1987), (Court holding that the wrongful death action brought on behalf of the decedent's parents was not barred, and any limitations imposed by the statute are inconsistent with the purposes of § 1983.  The goals of deterrence, compensation and federal supremacy require that defendants' motion to dismiss, and for summary judgment, on the basis of lack of standing under the state wrongful statute must be denied); citing *Brazier v. Cherry,* 293 F.2d 401 (5th Cir. 1961), and *Bell v. City of Milwaukee,* 746 F.2d 1205, 1238 (7th Cir. 1984).  Therefore, this Court should allow William V. Langfitt III and Patricia E. Langfitt to proceed with their Fourteenth Amendment claims and borrow Washington State Law Survival and Wrongful Death Statutes.

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

**Plaintiffs Cause of Action for the Torts of Outrage**

Defendant Deputy Colby shot William V. Langfitt IV several times within seconds of getting out of his vehicle.  A claim under § 1983 for excessive force fits and meets all the requirements set forth in the tort of outrage.  Plaintiffs are willing to stipulate that this claim is tied to the excessive use of force claim.

To establish a tort of outrage claim, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. *Reid v. Pierce County,* 961 P.2d 333, 336 (1998).  Here, Defendants engaged in extreme and outrageous conduct when Deputy Edwards shot and killed an unarmed man who committed no crime and was experiencing a mental health crisis.  Plaintiffs suffered severe emotional distress by losing their beloved son, Billy, who was taken away from them prematurely, who was seeking help from Defendants.  Defendants shot and killed Billy – who was unarmed.  Instead of receiving assistance, William V. Langfitt, IV received a death sentence from the Defendants.

## CONCLUSION

Plaintiffs' states claims which are viable.  Plaintiffs' claims provide Defendants with notice and the ability to draw the reasonable interference Defendants are liable for the misconduct alleged.  This Court should deny Defendants' Motion for Judgment on the pleadings and allow Plaintiffs claims to proceed to a jury trial.

DATED this 17th day of April, 2021.

By */s/ Jesse Valdez*_____
Jesse Valdez, WSBA #35378
VALDEZ LEHMAN, PLLC.
Co-Counsel and Attorney for Plaintiffs

By /s James Bible_____
James Bible, WSBA #34473
James Bible Law Group
Co-Counsel and Attorney for Plaintiffs

**VALDEZ LEHMAN, PLLC**
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415

By  /s/Errin Loyal
Errin Loyal, WSBA #56672
Loyal Law, PLLC
Co-Counsel and Attorney for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2021, I electronically filed the foregoing Response to Defendants Motion for Judgment with the Clerk of the Court using the CM/ECF system which will send notification of this filing to the attorneys of record and all registered participants.

By */s/ Jesse Valdez*
Jesse Valdez, WSBA #35378

Plaintiff's Response to Defendant's
Motion 12(c) For Judgment on Pleadings

25

VALDEZ LEHMAN, PLLC
14205 SE 36TH St. Ste 100
Bellevue, WA  98006
P: 425.458.4415