1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM V. LANGFITT, III,
individually and as executor of the Estate
of WILLIAM V. LANGFITT, IV, and
PATRICIA E. LANGFITT, individually,

              Plaintiffs,

    v.

PIERCE COUNTY, COLBY
EDWARDS, and "JANE DOE"
EDWARDS,

              Defendants.

CASE NO. C21-5122 BHS

ORDER

THIS MATTER comes before the Court on the following motions: Defendants
Pierce County and Colby Edwards's Rule 12(c) Motion for Judgment on the Pleadings,
Dkt. 16, and Plaintiffs William Langfitt, III, individually and as executor of the Estate of
William V. Langfitt, IV, and Patricia Langfitt's responsive Motion for Leave to Amend
their complaint, Dkt. 30. Also pending are Defendants' Motion to Strike Plaintiffs'
surreply, Dkt. 21, and Defendants' Motion for a Protective Order, Dkt. 24, asking the
Court to stay discovery pending resolution of Edwards's claim for qualified immunity.

The Court has considered the pleadings and the all the materials filed in support of and opposition to the motions. Its rulings follow.

## I.   BACKGROUND

This case arises from the March 16, 2018, shooting death of William V. Langfitt, IV, by Defendant Colby Edwards, a Pierce County Sheriff's Deputy. Plaintiffs allege that Langfitt was distraught following his grandfather's death. Dkt. 1, ⁋ 4.3. His friend Naomi Powers called 911 to report he was having a mental health crisis and to obtain assistance transporting him to the hospital. *Id.* ⁋ 4.4. While on the phone, Powers saw that Langfitt was in the street, barefoot, wearing shorts and a T-shirt, and holding nothing but a photo of his grandfather. *Id.* ⁋ 4.6. Edwards arrived on the scene, flung his door open, and immediately drew his firearm. *Id.* ⁋ 4.8. Edwards kept his gun trained on Langfitt and made no attempts to deescalate or negotiate before opening fire. *Id.* ⁋⁋ 4.9–4.13. Langfitt made no verbal or physical threats towards Edwards and did not touch him. *Id.* ⁋⁋ 4.14–4.15. Edwards shot Langfitt and then rolled his body over and handcuffed him. *Id.* ⁋ 4.16. Langfitt died at the scene. *Id.*

Plaintiffs (Langfitt's parents, individually, and his father as the executor of his estate) sued Edwards and Pierce County in February 2021, claiming Edwards violated[1] Langfitt's Fourth Amendment right to be free from excessive force, and deprived them of

---

[1] Plaintiffs' complaint alleges a "violation" of 42 U.S.C.§ 1983, Dkt. 1, ¶ 5.6, but no such claim is cognizable. "One cannot go into court and claim a violation of § 1983—for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002) (citing *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617 (1979)). It does not create any substantive rights. Section 1983 is instead merely a vehicle for enforcing individual rights secured elsewhere, most typically in the United States Constitution.

their Fourteenth Amendment liberty interest in a familial relationship with their son. Dkt. 1. They assert a *Monell* claim against Pierce County, and state law claims for negligence, outrage, false arrest, unlawful seizure, and discrimination in violation of Washington's Law Against Discrimination ("WLAD"), RCW Chapter 49.60, *et seq*. *Id.*

Defendants seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. 16. They contend that Plaintiffs' allegations are conclusory and without sufficient factual context to state a plausible claim. They argue Plaintiffs have not plausibly asserted a *Monell* claim against the County because they have failed to identify a policy, how it was deficient, or how it caused them harm. They argue that Plaintiffs' state law intentional tort claims are barred by the applicable two-year limitations period and that their negligence claim is inconsistent with their other claims. They argue that Plaintiffs' WLAD claim is not plausible because they have alleged no facts supporting the conclusion that Edwards's (or the County's) conduct was discriminatory. *Id.*

Defendants also argue that the Plaintiffs "artfully" pled their claims, to avoid describing the factual context of the shooting, which they argue involved Langfitt's effort to enter Edwards's vehicle. The Complaint does not set forth any factual context for the shooting; it focusses what did *not* happen, but discloses very little about what *did*:

> 4.14    William V. Langfitt, IV did not make any verbal or physical threats towards Defendant Colby Edwards.
>
> 4.15    William V. Langfitt, IV never touched Defendant Colby Edwards.
>
> 4.16    After shooting William V. Langfitt, IV, sheriff officer [sic] rolled his body over and handcuffed him.

Dkt. 1 at 5.

1    Defendants argue the bare bones complaint purposefully does not include the facts

2  leading up to the shooting, and that it thus improperly deprives Edwards of his qualified

3  immunity defense. They ask the Court to require Plaintiffs to file a reply to their Answer.

4  Dkt. 15.

5    Plaintiffs respond that Defendants are asking the Court to draw inferences in

6  Defendants' favor or to construe disputed facts in favor of the Defendants. Dkt. 17. More

7  persuasively, they seek leave to amend or supplement their complaint to address the

8  claimed deficiencies (and to revise their state laws claims) and their motion includes a

9  proposed amended complaint.[2] Dkts. 30 and 31-1. It is more detailed than the first, and

10 the recitation of facts surrounding the shooting now suggest that Langfitt sought to enter

11 Deputy Edwards's car from the open driver's door, but Plaintiffs blame Edwards for

12 leaving it open.

13   The proposed amended complaint minimally asserts that the County had a policy

14 of failing to train its officers to interact with mentally distraught persons; it alleges only

15 that "Pierce County failed to adequately train and equip Deputy Edwards with the tools

16 necessary to address issues related to unarmed individuals that were in need of mental

17 health assistance." Dkt. 31-1 at 8.

18   The proposed amended complaint barely addresses why the policy was deficient

19 or how it caused the shooting, and Defendants reasonably contend that the allegations are

20 too conclusory to survive a motion to dismiss.

21 ───────────────

22    [2] Local Rule 15 requires a motion to amend to include a proposed amended complaint, red-lined to highlight the amended portions.

Plaintiffs' proposed amended complaint abandons their state law excessive force and unlawful seizure claims, but asserts a negligence claim, wrongful death and survival actions, a claim asserting that Pierce County must indemnify Edwards for any damages awarded against him, an outrage claim, respondeat superior claims against the County, based on both their state law tort claims and their constitutional claims against Edwards, and a WLAD claim which simply quotes the statute. *Id.* at 16.

Defendants oppose amendment, arguing the effort is too late and prejudicial. They argue that amendment would be futile as to Plaintiffs' *Monell* claim against Pierce County and that the revised factual context still does not add up to a plausible Fourth Amendment excessive force claim against Edwards. They reiterate that Plaintiffs' negligence claim is irrevocably inconsistent with their assertions that Edwards acted intentionally, that their state law intentional tort claims are barred by the applicable two-year limitations period, and that Plaintiffs' revised WLAD claim is no more plausible than the one asserted in the earlier version.

Plaintiffs filed a surreply, Dkt. 20, in opposition to the Defendants' Rule 12(c) Motion, and Defendants moved to strike that filing as unauthorized, Dkt. 21. Because the Plaintiffs surreply, Dkt. 20, does not affect the resolution of the motion, Defendants' Motion to Strike, Dkt. 21, is DENIED as moot. Finally, Defendants have moved to stay discovery until the Court resolves their motion for judgment on the pleadings and Edwards's claim of qualified immunity. *See* Dkts. 24, 27, 28.

The substantive motions are addressed in turn.

## II.   DISCUSSION

**A.   Motion for Judgment on the Pleadings**

**1.      Standards**

A Rule 12(c) motion is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) (citing *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (applying *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to a Rule 12(c) motion). The difference is that a Rule 12(c) motion may be filed after the defendant answers, while a Rule 12(b)(6) motion must be filed before the defendant pleads.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles ("LA") Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

In determining whether to grant leave to amend under Rule 15, courts consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir 1990). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Defendants' Rule 12(c) motion for judgment on the pleadings attacks Plaintiffs' operative, original complaint, arguing that it fails to state a plausible claim against Pierce

County or Deputy Edwards, and asking the Court to dismiss it with prejudice. Dkt. 16. Plaintiffs oppose the motion, Dkt. 17, but also seek leave to amend, Dkt. 30, in an apparent effort to remedy any deficiencies in their operative complaint. An amended complaint properly filed while a motion to dismiss is pending generally moots the motion to dismiss. *See, e.g.*, *Williamson v. Sacramento Mortg., Inc.*, No. S-10-2600KJM-DAD, 2011 WL 4591098, at *1, (E.D. Cal., October 11, 2011) (internal citations omitted).

Defendants contend that the Motion to Amend should be denied as untimely and futile and argue that they would be prejudiced if Plaintiffs were permitted to amend their complaint, primarily because the proposed amended complaint suffers from the same deficiencies as the original complaint. Dkt. 32. The Court disagrees that Plaintiffs unduly delayed their attempt to amend or that Defendants will necessarily be prejudiced—a court must ordinarily permit a plaintiff to amend in the face of a motion to dismiss, even if the plaintiff does not ask for such leave, so long as doing so would not be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding that if a court finds dismissal warranted, it should grant leave to amend unless amendment would be futile). Discovery has not yet commenced.

Defendants also argue that the proposed amended complaint does not remedy the problems, so it would be futile to permit them to file it. The futility standard evaluates whether there are facts which *could* be plausibly alleged in an amended complaint, *Miller*, 845 F.2d at 214, not whether the proposed amended complaint itself survives a hypothetical Rule 12 motion. The Court will therefore address Plaintiffs' current claims

1   and Defendants' Motion for Judgment on the Pleadings, and then whether Plaintiffs could

2   amend their complaint to remedy any deficiencies.

3        Neither Plaintiffs' current complaint, Dkt. 1, nor their proposed amended

4   complaint, Dkt. 31-1, is a model of clarity, but it is apparent that they seek leave to

5   amend to state a plausible claim, even if the Court deems their proposed amended

6   complaint insufficient. *See* Dkt. 33 ("Even assuming the Plaintiffs inadvertently left out

7   claims, then Plaintiff[s] would seek to add those claims.").

8        The claims are addressed in turn.

9        **2.        Constitutional Claims.**

10       **a.        Excessive Force.**

11       Plaintiffs' primary constitutional claim is that Defendant Edwards violated

12   Langfitt's Fourth Amendment rights by using excessive force on him. And Edwards's

13   primary argument for judgment on the pleadings is that Plaintiffs failed to sufficiently

14   plead the factual circumstances surrounding their conclusory allegations which would

15   plausibly amount to a claim of excessive force. He claims that Plaintiffs must allege

16   enough facts to demonstrate that Edwards's use of force was objectively unreasonable.

17   He emphasizes that before Plaintiffs are entitled to discovery, they must "put forward

18   specific, nonconclusory factual allegations" that plausibly allege that Edwards' conduct

19   "was unlawful in the situation he confronted." Dkt. 16 at 13-14 (citing *Iqbal*, 556 U.S. at

20

21

22

1  685 (other citations omitted)). Edwards also argues that Plaintiffs should be required to

2  reply[3] to his Answer so that the Court can evaluate his entitlement to qualified immunity.

3       Qualified immunity is "*immunity from suit* rather than a mere defense to liability,"

4  so the Court begins its analysis there. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)

5  (emphasis in original). Defendants contend that both Plaintiffs' operative complaint and

6  their proposed amended complaint artfully plead around facts critical to establishing

7  Edwards's entitlement to qualified immunity from a claim of unconstitutional excessive

8  force.

9       "Government officials performing discretionary functions enjoy qualified

10  immunity from civil damages so long as their conduct does not violate 'clearly

11  established statutory or constitutional rights of which a reasonable person would have

12  known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting

13  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public

14  official is protected from suit when he or she "makes a decision that, even if

15  constitutionally deficient, reasonably misapprehends the law governing the

16  circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the

17  plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

18  335, 341 (1986).

19

20

21       [3] Edwards does not describe his request for an Order requiring a reply to his Answer as
   an alternative to the outright dismissal of Plaintiffs' claims with prejudice he also seeks, but the
22  Court construes it as one.

1    In analyzing a qualified immunity defense, the Court must determine: (1) whether

2  a constitutional right would have been violated on the facts alleged, taken in the light

3  most favorable to the party asserting the injury and (2) whether the right was clearly

4  established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S.

5  194, 201 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223

6  (2009). The Supreme Court has repeatedly held that clearly established law may not be

7  defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152

8  (2018); *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *City of San Francisco*

9  *v. Sheehan*, 575 U.S. 600, 613 (2015). Instead, courts must look at the "particular

10  context" at issue and determine the question within the "specific context" of the case. *See*

11  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

12    Plaintiffs correctly argue that at the time of the shooting, it was clearly established

13  that officers may not use deadly force against a person who cannot be reasonably

14  perceived to be taking any furtive or threatening actions, even if that person is armed.

15  Dkt. 17 at 15 (citing *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013)); *see also*

16  *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials

17  may not kill suspects who do not pose an immediate threat to their safety or to the safety

18  of others simply because they are armed."), *abrogated on other grounds by Galbraith v.*

19  *Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). If Edwards indeed shot Langfitt

20  without a reasonable basis to suspect he was armed, and without "a furtive movement,

21  harrowing gesture, or serious verbal threat [that] might create an immediate threat," he

22

1  violated clearly established law on the facts alleged. *George*, 736 F.3d at 839 (citing

2  *Saucier*, 533 U.S. at 201).

3        The Court must take material allegations in the complaint as true. *Keniston*, 717

4  F.2d at 1301. Defendants contend that the complaint omits critical factual context, Dkt.

5  16 at 11–12, including that Langfitt appeared to be armed with a knife and "attempted to

6  steal a patrol car in which a knife and loaded assault rifle was within his reach," Dkt. 15,

7  ¶ 8 (Defendants' Answer). Defendants contend that Plaintiffs' claim is not plausible

8  without these facts. *See, e.g.*, Dkt. 16 at 12 (citing *Iqbal*, 556 U.S. at 678). The Court

9  disagrees. While it is distressing that a 911 call for help in a mental health crisis could

10  result in a shooting without a "furtive movement, harrowing gesture, or serious verbal

11  threat," *George*, 736 F.3d at 839, it is not necessarily implausible.

12        The circumstances surrounding Langfitt's death, including the Defendants' claim

13  that he was shot because he charged at and attempted to enter Edwards's car, possibly to

14  access the assault rifle in that car, cannot be resolved on these pleadings or on this

15  motion. The fact that Plaintiffs acknowledge this additional fact in their response, Dkt. 17

16  at 19 (Langfitt was shot "for entering the door left open by Defendants"), and in their

17  proposed amended complaint, Dkt. 31-1, does not mean their excessive force claim is not

18  plausible. Defendants have not established that amendment of Plaintiffs' excessive force

19  claim would be futile. *Miller*, 845 F.2d at 214.

20        Defendants also argue that Edwards's immunity is from suit, not just from

21  damages, *Saucier*, 533 U.S. at 200, and that the Court should require a reply to

22  Defendants' Answer per Rule 7(a)(7). Dkt. 16 at 13 (citing *Crawford-El v. Britton*, 523

U.S. 574, 597–98 (1998)). They argue that a reply to their Answer would allow Edwards
to assert qualified immunity on the true factual context for the shooting.

In *Crawford-El*, the Supreme Court explained that a reply to Answer under Rule
7(a)(7) was one option available to courts in resolving qualified immunity, useful when a
plaintiff alleges an intent-based violation that is particularly difficult to resolve before
trial. 523 U.S. at 598. It permits the court to "insist that the plaintiff 'put forward specific,
nonconclusory factual allegations' that establish improper motive causing cognizable
injury in order to survive a pre-discovery motion for dismissal or summary judgment."
*Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)).

Plaintiffs *have* put forward specific, nonconclusory factual allegations that caused
a cognizable injury, and Edwards's intent is not at issue. *See Scott v. Harris*, 550 U.S.
372, 381 (2007) (excessive force analyzed under the Fourth Amendment's objective
reasonableness standard). Defendants simply dispute that these allegations tell the whole
story, including the parts that Edwards wants to emphasize. Requiring an additional
pleading is not superior to traditional motion practice, and the Court declines to employ it
here.

Plaintiffs' operative complaint is not sufficient to state a plausible excessive force
claim, but their proposed amended complaint addresses that deficiency. Edwards's
factual defense to the claim and his entitlement to qualified immunity on provable facts
(as opposed to allegations), must await a motion on the evidence. A plaintiff is under no
obligation to anticipate the qualified immunity defense (as Defendants concede, Dkt. 16
at 13), and a plaintiff is not required to assert exculpatory facts that a defendant claims

are true and which it believes can be proven at trial or even on summary judgment. At this stage, Plaintiffs must instead meet their *Iqbal* burden of pleading facts which, taken as true, amount to a plausible excessive force claim, including why Edwards's actions were unconstitutional.

The Court concludes that the proposed amended complaint does so, even though it could be more detailed. The Motion for Judgment on the Pleadings on Plaintiffs' Fourth Amendment claim is **DENIED**. Plaintiffs' Motion for Leave to Amend as to their excessive force claim is **GRANTED**. Plaintiffs shall file the amended complaint within 14 days.

> **b.**   ***Monell* Claim.**

Both iterations of Plaintiffs' complaint assert a municipal liability, or *Monell* claim, against Pierce County. The County argues that Plaintiffs have failed to articulate a policy, its deficiency, how it caused them harm, or how it amounted to deliberate indifference.

A local government may be held liable under 28 U.S.C. § 1983 only "when implementation of its official policies or established customs inflicts the constitutional injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Official policies or established customs may be shown when an omission such as a pervasive failure to train amounts to an official policy, *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012), *overruled on other grounds by Castro v. Cnty. of LA*, 833 F.3d 1060, 1070 (9th Cir. 2016), or when an official with final policy-making authority "ratified a

1    subordinate's unconstitutional decision or the action and the basis for it," *Gilette v.*

2    *Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

3          Plaintiffs claim that the County was the moving force behind a constitutional

4    violation in two ways, discussed in turn.

5          **i.  Failure to Train**

6          "In limited circumstances, a local government's decision not to train certain

7    employees about their legal duty to avoid violating citizens' rights may rise to the level of

8    an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S.

9    51, 61 (2011). To allege municipal liability under § 1983 for failure to train, Plaintiff

10   must allege: (1) the existing training program is inadequate in relation to the tasks the

11   particular officers must perform; (2) the failure to train amounts to deliberate indifference

12   to the rights of persons with whom the police come into contact; and (3) the inadequacy

13   of the training actually caused the deprivation of the alleged constitutional right. *Merritt*

14   *v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "A municipality's culpability

15   for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."

16   *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A 'pattern of similar constitutional

17   violations by untrained employees is ordinarily necessary to demonstrate deliberate

18   indifference for purpose of failure to train,' though there exists a 'narrow range of

19   circumstances [in which] a pattern of similar violations might not be necessary to show

20   deliberate indifference.'" *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir.

21   2014) (quoting *Connick*, 563 U.S. at 63).

22

1    Plaintiffs allege that Edwards was not trained to deal with one having a mental

2    health crisis and that the lack of training was the moving force behind Edwards's

3    unconstitutional reaction to the situation. Plaintiffs allege Langfitt was killed while

4    standing in the street, unarmed, barefoot, and holding a photo of his grandfather. Dkt. 1,

5    ¶ 4.6. Plaintiffs allege was experiencing a mental health crisis and made no threats, verbal

6    or physical, toward the officer who immediately drew his gun and shot and killed him. *Id*.

7    ¶¶ 4.8–4.16.

8    Defendants contend that Plaintiffs' *Monell* claim is insufficient as a matter of law.

9    Dkt. 32 at 4. They argue Plaintiffs have yet to identify the deficient policy or custom,

10   how it was the moving force causing the harm, or how it amounted to deliberate

11   indifference. *Id*. at 6.

12   Though the allegations could be clearer, Plaintiffs' proposed amended complaint

13   is just enough to plausibly state a claim under this standard. As with the excessive force

14   claim, the evidence in support of this claim may not be enough to prevail, but the

15   allegations themselves are plausible.

16   The Motion for Judgment on the Pleadings on Plaintiffs' failure to train *Monell*

17   claim is **DENIED**. Plaintiffs' Motion for Leave to Amend as to that claim is

18   **GRANTED**, and Plaintiffs shall file the amended complaint within 14 days.

19   **ii.  Ratification**

20   Plaintiffs' proposed amended complaint raises ratification as a new theory for

21   *Monell* liability. Ratification under *Monell* requires that a local government "ratif[y] a

22   subordinate's unconstitutional decision or action *and the basis for it*.'" *Clouthier*, 591

F.3d at 1250 (emphasis added). That an officer was not reprimanded or provided with additional training cannot support a theory of ratification without more. *Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014); *Clouthier*, 591 F.3d at 1253–54 (holding that a failure to discipline employees, without more, was insufficient to establish ratification). As this Court has previously concluded, when seeking to establish *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force. *German v. Roberts*, Case No. C15-5237 BHS-DWC, 2017 WL 6547472, at *2 (W.D. Wash. Dec. 22, 2017). "A plaintiff must also point to some set of facts to suggest the investigation's findings reflect a policy or custom that encourages or condones the alleged underlying constitutional deprivation," such that the policy or custom is the moving force behind the violation. *Id.*

The Motion for Judgment on the Pleadings on Plaintiffs' ratification Fourth Amendment claim is **DENIED** without prejudice. Plaintiffs' Motion for Leave to Amend to add a *Monell* ratification claim is **GRANTED**, though not as to the proposed amended complaint. If they choose to assert a ratification claim, Plaintiffs shall file an amended complaint consistent with this Order within 14 days.

### 3.     State Law Claims.

#### a.     False Arrest, Unlawful Seizure, and Outrage

To be viable, Plaintiffs' state law claims for false arrest, unlawful seizure, and outrage would at least require that Edwards used excessive force. Defendants contend that these claims are both insufficiently pled due to the omission of their asserted factual

1  context, discussed above, and barred by the statute of limitations. Plaintiffs' proposed

2  amended complaint abandons their false arrest and unlawful seizure claims but continues

3  to assert an outrage claim.

4          The standard for whether conduct is considered 'outrageous' is a high one: '[I]t is

5  not enough that a defendant has acted with an intent which is tortious or even criminal, or

6  that he has intended to inflict emotional distress, or even that his conduct has been

7  characterized by malice, or a degree of aggravation which would entitle the plaintiff to

8  punitive damages for another tort.'" *Hernandez v. Federal Way*, 456 F. Supp. 3d 1228,

9  1248–49 (W.D. Wash. 2020). Moreover, at least to bring a claim of outrage on behalf of

10  themselves, Plaintiffs would have to plead that they were present when the conduct

11  occurred. *Reid v. Pierce Cnty.*, 136 Wn.2d 195, 204 (1998) (en banc).

12          While neither the original nor the proposed amended complaint appear to

13  approach this standard, it is *possible* that Plaintiffs could plead facts to meet it.

14  Defendants also contend that outrage is not permitted when other tort remedies are

15  available to avoid double recovery. Defendants are correct that the Washington Supreme

16  Court has found instructing the jury on both outrage and assault at trial was error, *Rice v.*

17  *Janovich*, 109 Wn.2d 48, 61–62 (1987), but the risk of double recovery may be addressed

18  at a later phase of the proceedings.

19          However, even if the Plaintiffs could amend their complaint to assert a plausible

20  state law outrage claim consistent with the facts they have already alleged, that claim is

21  facially time barred. The limitations period for an outrage claim based on assault or

22  battery is two years. *See Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 809

(1991); *State Farm Fire & Cas. Co. v. Justus*, 199 Wn. App. 435, 452 (2017). Plaintiffs have not established that that period does not apply to their intentional tort claims, and they did not assert them for more than two years after the event.

Plaintiffs' outrage claim is not plausible on its face, and it would be futile to permit them to amend it where it is facially time-barred. The Motion for Judgment on the Pleadings on this claim is **GRANTED**, and Plaintiffs' Motion for Leave to Amend it is **DENIED** as futile. Plaintiffs' outrage claim is **DISMISSED** with prejudice.

**b.     Negligence, Wrongful Death, and Survival**

Plaintiffs' proposed amended complaint asserts Negligence, Wrongful Death, and Survival claims.

To establish a negligence claim, a plaintiff must plead duty, breach, proximate cause, and resulting harm. *Pedroza v. Bryant*, 101 Wn.2d 226, 228 (1984). In *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 544–45 (2019), the Washington Supreme Court held that intentional tort and negligence claims may coexist in a suit arising from an officer-involved shooting, where the plaintiff alleged negligence in the series of actions leading up to the decision to shoot. "The series of actions culminating in the use of deadly force may be analyzed in its constituent parts or, alternatively, as involving either negligent or intentional conduct." *Id*. at 545–46 (citing *District of Columbia v. Chinn*, 839 A.2d 701, 710 (D.C. 2003)). The Washington Supreme Court analogized to a person who is injured, "not by an officer shooting, but perhaps by running into a car as he attempts to flee from the officer in panic." *Id*. at 546.

Analogizing this claim to *Beltran-Serrano*, Plaintiffs allege that leaving the police car door open and drawing a gun on a person in mental health distress represents a negligent failure to follow police practices calculated to avoid the use of deadly force. 193 Wn.2d at 544. It is possible Plaintiffs could state a plausible negligence claim under the rule announced in *Beltran-Serrano*. The Motion for Judgment on the Pleadings as to this claim is **DENIED** without prejudice, and the Motion for Leave to Amend this claim is **GRANTED**, though not as to the proposed amended complaint. Plaintiffs shall file an amended complaint consistent with this Order within 14 days.

Defendants also contend that Plaintiffs' proposed wrongful death and survival claims fail because amendment of their underlying tort actions would be futile, Dkt. 32 at 9 (citing *Deggs v. Asbestos Corp., Ltd.*, 188 Wn. Ap. 495, 507 (2015) (wrongful death and survival actions are based on "underlying wrongful acts against the decedent")), but the Court disagrees that the underlying claims are not plausible, as discussed above. Therefore, amendment is not futile as to Plaintiffs' wrongful death and survival claims and the Plaintiffs' Motion for Leave to Amend to assert those claims is **GRANTED**. Plaintiffs shall file the amended complaint within 14 days.

### c.   Washington Law Against Discrimination

Plaintiffs' operative complaint alleges that, because Edwards knew the decedent was suffering from a mental health crisis, "this mental handicap was a motivating factor in the actions." Dkt. 17 at 20. RCW 49.60.030 establishes the right to be free from discrimination because of factors including the presence of any sensory, mental, or physical disability. To state a claim, Plaintiffs must plead both that Langfitt suffered from

1    a disability and that Defendants discriminated against him "because of that disability."

2    *City of Seattle v. McConahy*, 86 Wn. App. 557, 572 (1997) (citing *Doe v. Boeing Co.*,

3    121 Wn.2d 8, 13 (1993)).

4           Defendants contend that Plaintiffs have failed to plead facts to support motivation

5    based on protected status and failed to plead Langfitt had a mental health disability rather

6    than a mental health episode. Dkt. 19 at 12. The operative complaint could be construed

7    to allege that Edwards was motivated to use excessive force based on the mental health

8    disability causing Langfitt's mental health crisis. Though the proposed amended

9    complaint appears to lack these allegations, in the absence of contrary authority it is

10   possible that Plaintiffs *could* state a claim in the factual circumstances alleged.

11          Defendants' Motion for Judgment on the Pleadings as to this claim is **DENIED**,

12   and the motion to amend to assert a plausible WLAD claim is **GRANTED**, though not as

13   to the proposed amended complaint (which simply recites the elements of the claim).

14   Plaintiffs shall file an amended complaint that complies with this Order—one that does

15   more than simply recite the elements of claim, or just quotes the statue, but alleges facts

16   and factual context plausibly supporting the claim—within 14 days.

17          **d.     Respondeat Superior and Indemnification**

18          Plaintiffs appear to propose a respondeat superior claim against the County,

19   predicated on their state law tort claims. Defendants contend that Plaintiffs' state law

20   claims fail as a matter of law, so there is no basis for these claims against the County. As

21   discussed above, the Court disagrees, and amendment to assert such claims would not be

22   futile. The motion to amend to assert such a claim as to state law torts is **GRANTED.**

1    To the extent Plaintiffs assert respondeat superior predicated on *federal* law,

2  amendment would be futile as respondeat superior liability is not available for § 1983

3  claims. *See Monell*, 436 U.S. at 691. The Motion to Amend to add a respondeat superior

4  claim as to Plaintiffs' constitutional claims is **DENIED** as futile.

5    Plaintiffs' "indemnification" claim does not seek any relief; it asserts instead that

6  the County must pay any damage award they obtain against Edwards. This is not an

7  affirmative claim for relief; it is a premature argument about remedies. Plaintiffs' Motion

8  to Amend to assert an "indemnification" claim would be futile and it is **DENIED**.

9  **B.    Defendants' Motion for Protective Order**

10    Defendants ask the Court to stay discovery pending resolution their motion for

11  judgment on the pleadings and of Edwards' qualified immunity from suit. Dkt. 24. To the

12  extent this motion is not moot based on the Court's resolution of the motion for judgment

13  on the pleadings, the motion is **DENIED** without prejudice. On the record, Defendants

14  have not established that Edwards's entitlement to qualified immunity may be established

15  on the pleadings; the parties dispute the factual circumstances of the shooting. Further

16  development of these factual circumstances is required, either by the plaintiffs'

17  allegations in their forthcoming amended complaint, or after discovery. Only then may

18  the Court compare this case to *Long v. Slaton*, 508 F.3d 576, 581–83 (11th Cir. 2007),

19  which Defendants argue shows reasonable use of force when a suspect had an unstable

20  state of mind, stole a police cruiser, and failed to heed a deputy's warning to stop. Dkt. 24

21  at 2.

22

1    After Plaintiffs file an amended complaint, Defendants may renew their motion for

2    a protective order limiting discovery to issues bearing on qualified immunity.

3                                    **III.   CONCLUSION**

4    Defendant's Motion for Judgment on the Pleadings, Dkt. 16, is **GRANTED in**

5    **part** and **DENIED without prejudice in part**. Defendant's Motion to Strike, Dkt. 21, is

6    **DENIED as moot**. Defendant's Motion for a Protective Order, Dkt. 24, is **DENIED**

7    **without prejudice**. Plaintiffs' Motion for Leave to Amend, Dkt. 30, is **GRANTED,**

8    except as to Plaintiffs' outrage, respondeat superior liability for constitutional torts, and

9    proposed indemnification claims.

10   The Court is reluctant to invite further pleading and additional motion practice, but

11   Plaintiffs are entitled to an additional opportunity to amend their complaint to state

12   plausible claims. They should file a carefully drafted complaint addressing the

13   deficiencies and standards articulated in this Order within 14 days. Defendants may

14   renew or supplement their Motion to Dismiss (preferably, before answering), after that

15   filing.

16   Dated this 31st day of August, 2021.

17

18   _____

19   BENJAMIN H. SETTLE
     United States District Judge

20

21

22