UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM V. LANGFITT III, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>PIERCE COUNTY, et al.,<br><br>                Defendants. | CASE NO. C21-5122 BHS<br><br>ORDER |

THIS MATTER is before the Court on the following motions: Defendants Pierce County and Colby Edwards' renewed Motion to Dismiss, Dkt. 37, portions of Plaintiff Langfitt's[1] amended complaint, Dkt. 36; and Defendants' Motion to Compel Discovery, Dkt. 45.

### I.  BACKGROUND

The case arises from the March 16, 2018 shooting death of William V. Langfitt, IV by Defendant Colby Edwards, a Pierce County Sheriff's Deputy. *See* Dkts. 1 and 36.

---

[1] Plaintiff Langfitt III is decedent "Billy" Langfitt IV's father and the personal representative of his estate. Dkt. 36, ¶ 9. Langfitt IV's mother, Patricia, is also a plaintiff. *Id.* ¶ 10. This Order uses "Langfitt" as shorthand for the Plaintiffs for clarity and ease of reference.

ORDER - 1

1     Defendants previously sought dismissal of the bulk of Langfitt's claims against
2 them under Federal Rule of Civil Procedure 12(c). Dkt. 16. In response, Langfitt sought
3 leave to file an amended complaint addressing the claimed deficiencies in his original
4 complaint. Dkts. 30 and 31-1.

5     The Court's Order resolving those motions recites the factual and procedural
6 context of the case, which need not be repeated here. *See* Dkt. 35. In short, the Court
7 granted Langfitt's Motion to Amend and denied Defendants' motion on Langfitt's Fourth
8 Amendment excessive force claim and *Monell* claim (based on failure to train and
9 ratification). It dismissed with prejudice Langfitt's state law outrage claim. *Id.* at 17–19.

10     The Court also denied Defendants' Motion for Judgment on the Pleadings on
11 Langfitt's negligence, wrongful death, and survival claims and permitted him to file an
12 amended complaint asserting and supporting those claims. *Id*. at 20. It denied
13 Defendants' motion as to Langfitt's Washington Law Against Discrimination ("WLAD")
14 claim and permitted Langfitt to revise and support his WLAD claim in his amended
15 complaint. *Id.* at 21. The Court declined to permit Langfitt to assert a federal law
16 *respondeat superior* claim but permitted him to amend his complaint to assert a state law
17 vicarious liability claim. *Id.* at 21–22. Finally, the Court denied Langfitt's Motion to
18 Amend to add an indemnification claim. *Id*. at 22. The Court also declined to address
19 Defendants' Motion for a Protective Order, limiting discovery to the issue of Edwards'
20 qualified immunity, pending the amended complaint. *Id*. at 23.

21     Langfitt subsequently filed his First Amended Complaint, Dkt. 37, which is
22 slightly different than the one he proposed, *see* Dkt. 31-1. Defendants' renewed Motion

to Dismiss under Federal Rule of Civil Procedure 12(b)(6) argues that Langfitt's operative Complaint, Dkt. 36, retains many of the defects the Court ordered him to remedy, and includes the indemnification claim that the Court expressly excluded. Dkt. 37 at 7. It argues that Langfitt has still not plausibly alleged that some unconstitutional policy or custom caused the shooting and has not plausibly alleged that the County ratified Deputy Edwards' conduct. *Id*. at 3–7.

Defendants also argue that Langfitt's negligence claim remains implausible because it purposefully omits the facts surrounding the shooting, including, they claim, the fact that Langfitt jumped into the running and armed police cruiser. *Id*. at 8. They argue that Langfitt's WLAD claim is similarly not plausible because he has simply recited the elements of the claim but has not alleged facts supporting the conclusion that Edwards discriminated against Langfitt because of his disability. *Id.* at 9–11.

Defendants also renew their motion for a protective order, asking the Court to limit discovery in the case to the issue of qualified immunity until that threshold issue is resolved. *Id.* at 11–13. Finally, Defendants ask the court to compel Langfitt to respond to outstanding discovery requests. Dkt. 45.

The issues are addressed in turn.

## II.   DISCUSSION

**A.     Motion to Dismiss Standard.**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.     Langfitt's indemnification claim is dismissed with prejudice.**

The Court's prior Order rejected Langfitt's effort to amend his complaint to assert an "indemnification" claim. Dkt. 35 at 22. As the Court explained, that is not an affirmative claim, it is a post-judgment remedy arguing that the County must pay any damage award Langfitt obtains against Edwards. Nevertheless, the Amended Complaint includes such a claim. Dkt. 36 at 16 ("Count VI–State Law Claim–Indemnification"). Langfitt's response to the motion does not defend the inclusion of this claim. *See* Dkt. 39.

1 | Defendants' Motion to Dismiss Langfitt's state law indemnification claim is therefore
2 | GRANTED, and that claim is DISMISSED with prejudice and without leave to amend.
3 | **C.      Langfitt's ratification claim remains implausible.**
4 |          Langfitt's Amended Complaint seeks to bolster his *Monell* claim against Pierce
5 | County based on its alleged ratification of Edwards' unconstitutional conduct:
6 |          Pierce County has approved and ratified the Defendant deputies' actions.
           That is because those actions were consistent with Pierce County policy,
7 |          and they occurred because of Pierce County's failure to adequately train,
           supervise, and discipline its deputies. Pierce County implicitly and overtly
8 |          condones and defends deputies that shoot and kill unarmed individuals.
           Further, Pierce County repeatedly fails to discipline deputies who commit
9 |          acts of excessive force especially when it involves the use of deadly force.
10 | Dkt. 36, ¶ 7. Langfitt repeats this conclusory allegation elsewhere in his amended
11 | complaint, asserting that Pierce County "quickly ratified" Edwards' conduct, *id*. ¶¶ 60,
12 | 74, and that "the ratification of the shooting continues," *id*. ¶ 81.
13 |         Defendants seek dismissal of this claim as implausible. They argue that Langfitt
14 | has failed to allege facts supporting the conclusion that the investigation into the shooting
15 | reflects a policy or custom that encourages or condones the alleged underlying
16 | constitutional deprivation—much less that it shows a deliberate indifferent policy or
17 | custom that was the moving force behind the violation. Dkt. 37 at 6.
18 |         Langfitt responds by citing the "Thin Blue Line," which he alleges is itself a
19 | custom or policy in the Pierce County Sherriff's department, led by Sherriff Ed Troyer.
20 | Dkt. 39 at 10–11. He claims that Troyer "blatantly, explicitly and overtly promoted the
21 | Thin Blue Line," *id.* at 11, and in doing so ratified and condoned the unconstitutional
22 | conduct of deputies, including Edwards. He points out that Thin Blue Line bumper

ORDER - 5

stickers remain on Pierce County Sherriff's vehicles. *Id*. He argues that he has alleged more than a barebones recital of the elements of a ratification claim and that he is entitled to discovery on this issue to develop the proof he will need at trial. *Id*.

Defendants reply that Troyer was not even the Sherriff when the shooting occurred and that the still-conclusory facts describing the "Thin Blue Line" are not alleged in Langfitt's amended complaint. Dkt. 42 at 7. They reiterate that a plaintiff must plead facts plausibly supporting a claim and point out that the ratification claim in Langfitt's proposed amended complaint, Dkt. 31-1, ¶ 7, is not different than the claim in his operative amended complaint, Dkt. 36, ¶ 7, which the Court already indicated was insufficient.

The Court previously informed Langfitt when he sought to amend his complaint to add this claim that a *Monell* ratification claim requires that a local government "ratif[y] a subordinate's unconstitutional decision or action *and the basis for it*.'" *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2012), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (emphasis added) (internal quotation omitted). That an officer was not reprimanded or provided with additional training, without more, cannot support a ratification theory. *Morales v. Fry*, C12-2235-JCC, 2014 WL 1230344, at *14 (W.D. Wash. Mar. 25, 2014); *Clouthier*, 591 F.3d at 1253–54 (a failure to discipline employees, without more, was insufficient to establish ratification). A plaintiff must present more than just a police investigation that concludes an officer applied reasonable force. *German v. Roberts*, Case No. C15-5237 BHS-DWC, 2017 WL 6547472, at *2 (W.D. Wash. Dec. 22, 2017). He "must also point

to some set of facts to suggest the investigation's findings reflect a policy or custom that encourages or condones the alleged underlying constitutional deprivation," such that the policy or custom is the moving force behind the violation. *Id.*; *see also* Dkt. 35 at 16–17. In short, the fact an employer investigated a shooting and did not discipline the officer is not, by itself, evidence of ratification, and alleging such facts does not state a plausible claim.

Langfitt states that the County ratified Edwards' conduct, but he has alleged no facts supporting that conclusion. He has alleged no set of facts suggesting the County's investigation of the shooting reflects a policy or custom that was the moving force behind a constitutional violation. Langfitt's Thin Blue Line allegation is not in his Amended Complaint, and it, too, is vague and conclusory. Langfitt has failed to plead a set of facts sufficient to support a plausible *Monell* claim based on ratification, and Defendants' Motion to Dismiss that claim as asserted in Langfitt's amended complaint is GRANTED. That claim is DISMISSED with prejudice.

**D.      Langfitt's WLAD claim remains implausible.**

Langfitt asserts that Edwards violated WLAD when he "treated Billy [Langfitt] differently because he was suffering from a mental health crisis and this motivated Defendant Deputy Edwards to use excessive force based on the mental health disability causing Billy's death." Dkt. 36, ¶ 116.

Defendants argue that despite the Court's prior Order, Langfitt has still not pled a set of facts plausibly supporting the claim that Edwards was motivated to discriminate against him (i.e., shoot him) *because* he was mentally disabled. Dkt. 37 at 9. They point

1  out, persuasively, that Langfitt's Amended Complaint in other places repeatedly alleges
2  that Edwards "failed to recognize" that Langfitt was suffering a mental health crisis. *Id.*;
3  *see also, e.g.*, Dkt. 36, ¶ 42. Indeed, the Amended Complaint alleges that the County is
4  liable for failing to train Edwards on how to deal with such circumstances. Dkt. 36,
5  ¶¶ 76–78.
6        The Court's prior Order acknowledged that Langfitt could potentially assert a
7  plausible WLAD claim but concluded that he had not done so, in either his initial
8  complaint or his proposed amended complaint, Dkt. 31-1, as those allegations merely
9  recited the elements of a WLAD claim. *See* Dkt. 35 at 21. Langfitt's Amended Complaint
10 revises this claim only slightly. It now alleges that Plaintiffs "believe" that "Langfitt was
11 suffering from a mental health crisis/disability" and that they "believe Edwards treated
12 Langfitt differently because he was suffering a mental health crisis," and that "this
13 motivated Edwards to use excessive force based on the mental health disability, causing
14 Billy's death." Dkt. 36, ¶ 116.
15       Defendants argue that this is insufficient as a matter of law; Langfitt is still simply
16 reciting the elements of a WLAD claim, with the added allegation that the plaintiffs
17 "believe" that Edwards was motivated to shoot Billy Langfitt because he was mentally
18 disabled. Dkt. 37 at 9–11. They argue that *Iqbal* and *Twombly* expressly hold that such
19 conclusory allegations are insufficient: "a conclusory allegation based on information and
20 belief remains insufficient under *Iqbal/Twombly* since to find otherwise would
21 contravene the basic teachings . . . of *Iqbal*." Dkt. 37 at 10 (quoting *Masimo Corp. v.*
22

*Apple Inc.*, No. SACV 20-48 JVS (JDEx), 2021 WL 925885, at *8 (C.D. Cal. Jan. 6, 2021) (internal quotation marks omitted)).

The Court agrees. Langfitt has alleged no set of facts plausibly supporting the conclusion that Edwards' conduct was motivated by Langfitt's disability. They have not plausibly alleged that Langfitt was disabled, or that Edwards perceived him to be disabled, or that he shot Langfitt based on or because of that disability. The claim is not plausible under Rule 12(b)(6). Defendants' Motion to Dismiss Langfitt's WLAD claim is GRANTED, and that claim is DISMISSED with prejudice.

**E.     Langfitt's negligence claim remains implausible.**

Construed in the light most favorable to Plaintiffs, Langfitt's Amended Complaint alleges that Edwards negligently left his police cruiser's door open when he arrived on the scene. Langfitt also alleges that Edwards was negligent in pointing his gun at Billy and failed to use reasonable care to avoid using deadly force. Dkt. 36, ¶ 95.

Defendants seek dismissal of this claim under Rule 12(b)(6), arguing again that though the Court permitted amendment of the claim, Langfitt has failed to remedy its defects. Dkt. 37 at 7–8. They argue that the face of the operative complaint still makes no factual showing how Edward's negligence proximately caused Edwards to intentionally shoot Langfitt; the complaint continues to omit the factual context of the incident. *Id*.

Langfitt responds that the Court already indicated that it is possible for negligence to lead to an intentional shooting. Dkt. 39 at 3 (citing *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 544–45 (2019)). Langfitt argues that Edwards' failure to follow police

1 procedures and to otherwise act reasonably to avoid the use of deadly force caused the shooting and the resulting harm. *Id*.

Defendants reply that, despite the Court's prior Order concluding that Langfitt could conceivably allege facts supporting a claim within *Beltran-Serrano*, Dkt. 42 (citing Dkt. 35 at 20), Langfitt's amended complaint does not do so; it does not mention the failure to follow police procedures and continues to omit the fact that Defendants rely upon most, that Billy Langfitt entered the running, armed police cruiser before he was shot. It argues that absent such an allegation, Langfitt cannot plausibly make the requisite causal connection between the alleged negligence and the resulting harm.

The Court agrees. Leaving the door open, even if negligent, is not by itself actionable. Langfitt has not plausibly alleged that Edwards' negligence proximately caused the shooting, as a matter of law. Defendants' Motion to Dismiss Langfitt's state law negligence claim is GRANTED, and that claim is DISMISSED with prejudice.

**F.    Defendants' requests for a protective order limiting discovery and for a revised case schedule are granted.**

Defendants renew their motion for a protective order, limiting discovery into issues bearing on Edward's qualified immunity defense to Langfitt's Fourth Amendment excessive force claim. Dkt. 37 at 11–13. They also ask the Court to revise the case schedule. *Id.* at 13–14. They note that the Court's prior Order agreed that Langfitt had purposefully not alleged the factual circumstances surrounding the incident and signaled that Edwards' entitlement to qualified immunity required development of the factual circumstances. *Id.* at 11 (citing Dkt. 35 at 12).

Langfitt's Response does not directly address this motion but concedes that the case schedule should be revised. Dkt. 39 at 11. The motion for a protective order is GRANTED. Discovery in this case shall be limited to the facts and events leading up to the shooting, including the actions of Billy Langfitt and Edwards. Other discovery shall not be propounded for 90 days after the date of this Order. Discovery that has already been propounded shall be answered, as discussed below. The motion to revise the case schedule is also GRANTED, and the parties shall file a Joint Status Report within 30 days addressing and proposing revised pre-trial deadlines and trial dates, and any other matters likely to arise before trial. The Clerk's revised scheduling order will be based on that JSR.

**G.   Defendants' Motion to Compel is granted.**

Defendants' Motion to Compel asks the Court to require Langfitt to respond to discovery that it claims is long overdue. Dkt. 45. They argue and demonstrate that they have responded to discovery on issues like training and use of force policies, while Langfitt has provided only objections and limited documents. *Id.* at 3. They assert that Langfitt has resisted further discovery until Defendants agree to mediate. They seek an order requiring complete and non-evasive discovery responses by a date certain and a revised scheduling order including expert disclosure dates. They also ask the Court to stay depositions until Langfitt responds to outstanding discovery.

Langfitt's Response, Dkt. 47, effectively concedes that he has not timely responded to Defendants' discovery requests. Langfitt claims some requests are vague, and some seek information that the Defendants possess or created and argues that

Defendants agreed to enter various stipulations to obtain other records (from, for example, the IRS) but have not followed through. Langfitt argues that Defendants' requests for employment and income information are not proportional to the needs of the case, where the Plaintiffs are not "focused" on economic damages. *Id*. at 7.

The Court does not agree. The Amended Complaint plainly alleges that Langfitt "lost earnings and earnings capacity" and seeks special and general damages. Dkt. 36, ¶ 87. The parties should exchange proposed stipulations to obtain such evidence, and if they cannot, submit the matter for the Court's resolution, preferably under Local Rule 37.

The Motion to Compel is GRANTED. Plaintiffs are hereby COMPELLED to respond to Defendants' outstanding discovery if and to the extent they have not done so, including the production of documents in their custody and control, within ten days of this Order. Depositions scheduled by Plaintiffs are STAYED for six weeks. As discussed above, discovery into the factual circumstances of the incident itself have priority, and the parties shall coordinate and cooperate in addressing that discovery first.

Defendants do not seek, and the Court will not award, sanctions on this motion. That may not be the case if there are future discovery disputes of this nature.

IT IS SO ORDERED.

Dated this 15th day of March, 2022.

BENJAMIN H. SETTLE
United States District Judge